RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

2005 JUL -1 P 3: 57

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| **BARBARA D. GRAHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JURY DEMANDED** |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** 2:05 CV 624-A |
| | ) | |
| **WYETH d/b/a WYETH, INC. ;** | ) | |
| **et al.** | ) | |
| **Defendants.** | ) | |

## NOTICE OF REMOVAL

Defendants Wyeth (registered to do business in Alabama as Wyeth, Inc.), and Wyeth

Pharmaceuticals Inc. (incorrectly named in the Complaint as Wyeth Pharmaceuticals a/k/a

Wyeth Pharmaceuticals, Inc.)[1]("Wyeth"), give notice, with full reservation of all defenses, that

this cause is hereby removed from the Circuit Court of Bullock County, Alabama, to the United

States District Court for the Middle District of Alabama, Northern Division. As and for its

Notice of Removal, Wyeth shows unto the Court as follows:

1.      This lawsuit is a civil action within the meaning of the Acts of Congress relating

to removal of cases. *See* 28 U.S.C. §§ 1441(b), 1446(b).

2.      Plaintiff Barbara D. Graham instituted this civil action in the Circuit Court of

Bullock County, Alabama, on June 3, 2005, against the defendants, said case bearing number

CV-05-68. Plaintiff alleges that she suffered injuries as the result of her use of hormone

replacement therapy drugs (hereinafter "HRT"). Less than thirty days have passed since service

of the original Summons and Complaint ("Complaint") upon the defendants. Therefore, this

_____

[1]      Wyeth Pharmaceuticals is a unincorporated division of Wyeth. Because Plaintiff alleges Wyeth
Pharmaceuticals a/k/a Wyeth Pharmaceuticals, Inc. is a separate corporate entity, Defendants assume Plaintiff
intended to name Wyeth Pharmaceuticals Inc.

removal is timely pursuant to 28 U.S.C. § 1446(b). A true and correct copy of the Summons and Complaint served on Wyeth in this action is attached hereto as Exhibit A, and is incorporated by reference herein.

3.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332, because complete diversity of citizenship exists between the properly joined parties and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

### CONSENTS TO REMOVAL

4.      The Complaint also purports to assert claims against Qualitest Pharmaceuticals, Inc., Bill Blount, Walter Williams, III, Jennifer Andrews, Charles H. Payne, and Bill Richards. However, as set forth below, these defendants have been fraudulently joined. Fraudulently joined defendants need not join in or consent to removal. *GMFS, L.L.C. v. Bounds*, 275 F.Supp.2d 1350, 1353 (S.D. Ala. 2003); *See also Balazik v. County of Dauphin*, 44 F.3d 209, 213 n. 4 (3d Cir.1995); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir.1983); *Coyne v. America Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir.1988). The Fifth Circuit has explained that fraudulently joined defendants need not join in or consent to removal because they are not "proper defendant[s]." *Jernigan v. Ashland Oil*, 989 F.2d 812 815 (5th Cir. 1993).

### COMPLETE DIVERSITY OF CITIZENSHIP EXISTS
### BETWEEN THE PLAINTIFF AND THE PROPERLY JOINED DEFENDANTS

5.      Upon information and belief, Plaintiff is, and was at the institution of this civil action, and at all times intervening, a citizen and resident of the State of Alabama. Complaint at ¶ 1.

6.      Wyeth is, and was at the time of the institution of this civil action, a corporation organized and existing under and by virtue of the laws of the State of Delaware, having its

principal place of business in New Jersey. Complaint at ¶ 2. As a result, Wyeth is not now, and was not at the time of the filing of the complaint, a citizen and resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of causes.

7.      Wyeth Pharmaceuticals Inc. is, and was at the time of the institution of this civil action, a foreign corporation, organized and existing under and by virtue of the laws of Delaware, having its principal place of business in Pennsylvania. As a result, Wyeth Pharmaceuticals Inc. is not now, and was not at the time of the filing of the complaint, a citizen and resident of the State of Alabama within the meaning of the Acts of Congress relating to the removal of causes.

8.      The Complaint purports to state claims against unnamed, fictitious defendants identified as Fictitious Defendants A through H. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

9.      The Complaint also purports to assert claims against Qualitest Pharmaceuticals, Inc., Bill Blount, Walter Williams, III, Jennifer Andrews, Charles H. Payne, and Bill Richards. These Defendants are alleged to be Alabama citizens. However, as demonstrated below, these defendants have been fraudulently joined, and their citizenship must be disregarded by the Court for purposes of determining jurisdiction.

**THE ALABAMA RESIDENT DEFENDANTS
HAVE BEEN FRAUDULENTLY JOINED**

10.      In this Circuit, the fraudulent joinder standard is as follows:

> Joinder has been deemed fraudulent in [three] situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant .... The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts .... In *Tapscott*, 77 F.3d at 1355 (11th Cir. 1996)(*rev'd on other grounds*), a third situation of fraudulent joinder was

> identified – i.e., where a diverse defendant is joined with a
> nondiverse defendant as to whom there is no joint, several
> or alternative liability and where the claim against the
> diverse defendant has no real connection to the claim
> against the nondiverse defendant.

*Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287-89 (11th Cir. 1998) (internal citations

omitted). While this standard is described as requiring that a defendant establish that there is no

possibility that the plaintiff might prevail against a non-diverse defendant, courts reject the

suggestion that "any mere theoretical possibility of recovery under local law … suffices to

preclude removal." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003). Rather, numerous circuits

have recognized that the standard is more correctly described as requiring a showing that there is

*no reasonable basis* for predicating liability against the fraudulently joined defendant. *Id.* at *3.

*See also In re Rezulin Prods. Laib. Litg.,* 133 F.Supp. 2d 272, 280 n.4 (explaining same); *Crowe*

*v. Coleman,* 113 F.3d 1536, 1540 (11th Cir. 1997) (applying "arguably a reasonable basis" test

(quoting *Bobby Jones Garden Apt. v. Suleski*, 391 F.2d 172,177 (5th Cir. 1968); *BP Chems. Ltd.*

*v. Jiangus Sopo Corp.,*  285 F.3d 677, 685 (8th Cir. 2002) (applying "reasonable basis" test);

*Schwartz v. State Farm Mut. Auto Ins. Co.,* 174 F.3d 875, 879 (7th Cir. 1999) (noting that it

cannot "say that there is no possibility that a state court would someday" recognize plaintiff's

liability theory, but upholding removal because that currently "is not a reasonable possibility");

*Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3rd Cir. 1990).* (applying "reasonable basis"

test); *see also Woods v. Firestone Tire & Rubber Co.*, 560 F. Supp. 588, 590 (S.D. Fla. 1983)

(applying "arguably reasonable basis" test); *TKI, Inc. v. Nichols Research Corp.,* 191 F.Supp. 2d

1307, 1313-14 (M.D. Ala. 2002) (applying "reasonable basis" test); *Anderson v. Allstate Life Ins.*

*Co.,* No. 00-0958, 2001 WL 228057, *8 (S.D. Fla. Feb. 1, 2001) (same); *El Chico Rest. Inc. v.*

*Aetna Sur. & Case Co.,* 980 F. Supp. 1474, 1478-79 (S.D. Ga. 1997) (same).

11.    As such, the citizenship of the non-diverse defendants should be disregarded because there is no "reasonable basis for predicting that the state law might impose liability [on them] on the facts involved." *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997).  Absent a "reasonable basis," the joinder of the Alabama citizens is fraudulent and will not preclude this Court's exercise of diversity jurisdiction. *See id.* at 1538, 1540.   Moreover, as recognized in *TKI, Inc. v. Nichols Research Corp.*, 191 F.Supp.2d 1307 (M.D. Ala. 2002), "although the fraudulent joinder standard is not the same as the summary judgment standard, it is a summary-judgment-like process", which necessarily requires a <u>merits inquiry</u>. <u>Id.</u> at 1314 (citations omitted).

12.    Here, the non-diverse defendants – Qualitest Pharmaceuticals, Inc., Charles H. Payne, Jennifer Andrews, Walter Williams, III, Bill Blount and Bill Richards – are fraudulently joined because there is no reasonable possibility that the plaintiff can prove a cause of action against them.

13.    In the Complaint, Plaintiff asserts six claims against the "Defendants," without any distinction between them: a claim under the Alabama Extended Manufacturer Liability Doctrine ("AEMLD") (Count I); a claim for negligence/wantonness (Count II); a claim for breach of express warranty (Count III); a claim for breach of the implied warranty of merchantability (Count IV); a claim for fraudulent misrepresentation (Count V); and a claim for fraudulent suppression (Count VI). Plaintiff has no reasonable basis under Alabama law upon which to maintain any of these claims against the Alabama resident Defendants.

### PLAINTIFF HAS NO REASONABLE BASIS FOR A CLAIM AGAINST QUALITEST PARMACEUTICALS, INC.

14.    Qualitest is a distributor of various finished pharmaceutical products, including MPA. [Declaration of William Propst, ¶ 4, attached as Exhibit B].   Qualitest has never

manufactured, or held itself out as a manufacturer of, MPA. *Id. at* ¶ 3.  Instead, a third party manufactures, packages, seals and labels the MPA and ships it to Qualitest in sealed containers. *Id*. at ¶ 5.  Qualitest does not open any of the sealed packages of MPA for inspection; it simply distributes the MPA, in the unopened container, to independent pharmacies, chain pharmacies and hospitals. *Id. at* ¶ 8.   Qualitest has never sold MPA directly to the ultimate user, i.e., the patient. *Id*. at ¶ 2.  Qualitest did not provide any warnings or package inserts for MPA, as any warnings or package inserts are provided by the manufacturer at the time of packaging and included in the sealed package.  *Id. at* ¶ 6.  Qualitest has never had any sales representatives call on doctors, or provide samples of the MPA product to doctors. *Id.* at ¶ 9. It has never recommended or approved a recommendation that any doctor, pharmacist or consumer prescribe, dispense, or use MPA.  *Id. at* ¶ 11.

      15.     Under Alabama law, a distributor has available the closed container defense, which requires the distributor to show (1) that it is in the business of distributing a finished product; (2) that it received the finished product in a defective condition; (3) that it did not contribute to the defective condition and had no knowledge of the alleged defect; and (4) that its opportunity to inspect the product was not superior to the opportunity of the consumer. *Allen v. Delchamps, Inc.,* 624 So.2d 1065, 1069 (Ala. 1993),citing *Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala. 1976).  *See also Fleming Farms v. Dixie Ag Supply, Inc.* 631 So.2d 922 (Ala. 1994) (affirming summary judgment for a distributor where the defendant only distributed the allegedly defective product, which was received in a sealed container and shipped unopened by the distributor, without any knowledge of the alleged defect in the product); *Evelyn Johnson v. General Motors Corp.,* in the United States District Court, Southern District of Alabama, Civil Action No. CV-97-0046-BH-C (July 22, 1997) (copy attached hereto as Exhibit C), (denying

plaintiff's motion to remand based on the closed container defense); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213 (S.D. Ala. 1998) (denying plaintiff's motion to remand and holding local distributors of cigarettes fraudulently joined because the distributors' handling of the cigarettes did not contribute to their allegedly defective nature.).

16.    The "closed container" defense is directly applicable here, insulating Qualitest from any liability. Plaintiff cannot show any causal relationship between Qualitest's conduct and the alleged defect of which Plaintiff complains, the inadequate warnings on the MPA she allegedly ingested.

## PLAINTIFF HAS NO REASONABLE BASIS FOR HER CLAIMS AGAINST JENNIFER ANDREWS AND BILL RICHARDS

### a.    There is no factual basis for Plaintiff's claims against Jennifer Andrews and Bill Richards because they never detailed HRT medications to Dr. Stuart May.

17.    Plaintiff bases her claims against Jennifer Andrews and Bill Richards solely up their status as employees of Wyeth who detailed Premarin, Prempro and MPA to her prescribing doctor, Dr. Stuart May. Complaint, ¶ 13. As shown by the attached declarations, Jennifer Andrews and Bill Richards never detailed[2] the Wyeth HRT drugs in question to Dr. Stuart May. *See* Exhibits E and D. Since Jennifer Andrews and Bill Richards did not detail Wyeth's HRT drugs to Plaintiff's prescribing physician, and never had any direct contact with the Plaintiff, there is no factual nexus between Plaintiff and Jennifer Andrews and Bill Richards to support any cause of action. Moreover, as set forth in detail below, even if they had detailed Wyeth's

---

2    "Detail" work consists of visiting physicians to provide them with information contained in FDA-approved package inserts for Prempro and Premarin, so that the physicians can consider whether to prescribe those produces for their particular patients. The sales representatives and managers do not directly sell or contract with any physician regarding the sale of Prempro, Premarin or other prescription drugs. See Declarations of Bill Richards, Jennifer Andrews, Walter Williams, Charles Payne and William Blount, attached hereto as Exhibits D, E, F, G and H.

drugs, there is no reasonable basis for these claims against them.

## PLAINTIFF HAS NO REASONABLE BASIS FOR HER CLAIMS AGAINST WALTER WILLIAMS, III, CHARLES H. PAYNE AND WILLIAM BLOUNT

### a.    Plaintiff's AEMLD Claims Must Fail.

18.    Plaintiff cannot establish an AEMLD claim against Walter Williams, III, Charles H. Payne or William Blount, even though they detailed Wyeth's hormone therapy drugs to her prescribing physician, Dr. Stuart May.  To state a cause of action under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product." *Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (citing *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976)). These Defendants cannot be liable under the AEMLD because they are not the "manufacturers" or "sellers" of HRT.

19.    This result is confirmed by case law.  Applying Alabama law in the Rezulin MDL litigation, the court held that the AEMLD does not impose liability on pharmaceutical representatives who "neither manufactured, sold nor supplied [the drug in question]." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 287 (S.D.N.Y. 2001).  As Judge Kaplan explained, based on "'moral notions of consumer protection and on economic and social grounds' . . . the AEMLD imposes liability only on manufacturers, sellers and suppliers" and not on "a corporate employee," such as a pharmaceutical representative. *Id.* at 287-88 (quoting *Atkins*, 335 So. 2d at 139); *see also In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 138-39 (S.D.N.Y. 2001) (territory representative not liable under the AEMLD).  Here, as in the *Rezulin* cases, these Defendants were not manufacturers or sellers of the HRT medications at issue. Indeed, as the Complaint alleges, they were representatives for the Wyeth Defendants "[who were] acting within the course and scope of [their] employment with the Wyeth Defendants while transacting business in Alabama." Complaint, ¶¶ 8, 10.  As a result, they

cannot be held liable under the AEMLD. *See Turner*, 508 So. 2d at 254 (to state a cause of action under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product").[3]

    **b.**  **Plaintiff cannot maintain a claim against Walter Williams, III,**
       **Charles H. Payne and William Blount for negligence/wantonness.**

  20.  There is no reasonable basis for a negligence/wantonness claim against these Defendants because the plaintiff in products-liability cases may proceed on negligence/wantonness and warranty theories only against "manufacturers" and "sellers." *Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965) (on a negligence theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article"); *Bowman v. Coleman Co., Inc.*, No. 96-448-P-C *9-11 (S.D. Ala Sept. 3, 1996) (finding that retail manager owed no duty to plaintiff upon which plaintiff could predicate a negligence or wantonness claim arising out of the purchase of an allegedly defective heater) (Exhibit I). Because these Defendants are neither manufacturers nor sellers of the HRT drugs that they detailed, Plaintiff cannot maintain an action against them for negligence/wantonness.

---

  3  The court's decision in *In re Rezuilin Products Liab. Litig.*, 133 F. Supp. 2d 272, 286-87 (S.D.N.Y. 2001) is in accord with the decision in *Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C (S.D. Ala. Sept. 3, 1996) (Exhibit I). There, the court denied remand where a plaintiff purported to assert a claim under the AEMLD against a non-diverse retail store manager. As the court explained, "[a] plaintiff can invoke the AEMLD only as to manufacturers and sellers of allegedly defective products." *Id.*, slip op. at 4; *accord Turner*, 508 So. 2d at 254. The court held that the store manager had been fraudulently joined because "neither the applicable case law nor the policy objectives articulated by Alabama and other state courts can support the extension of the AEMLD to encompass *salespersons, store managers, or other agents* of a retailer." *Bowman*, slip op. at 8 (emphasis added).

       c.     **Plaintiff has no reasonable basis for a claim against Walter Williams, III, Charles H. Payne and William Blount for breach of warranty because they are not the manufacturer nor seller of the allegedly defective medication.**

21.     Plaintiff cannot maintain a claim for breach of express or implied warranty because these Defendants were neither "sellers" nor "suppliers" of Prempro, Premarin or MPA. The UCC is explicit on this point: its express and implied warranty provisions apply only to "sellers." *See* Ala. Code § 7-2-313(1) ("Express warranties by the seller are created as follows . . ."); *id.* at § 7-2-314(1) ("a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind").

22.     As is also true of the AEMLD claim, the seller of the product is, as a matter of law, the corporate entity that makes the sales – not the employee of the corporation. *See Rezulin*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," not the professional representative); *see also Labato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408 (10th Cir. 1958) (drug store employee who sold defective product was fraudulently joined because he was not a "seller" and thus could not be held liable for breach of warranty); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product."); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160 (S.D. Miss. 1997) (stating that courts cannot hold sales representatives liable for breach of warranty when they are "not in the business of selling products but rather are employed by companies that are in the business of selling products") (quotations omitted).

23.     As the uncontradicted evidence reflects, these Defendants never interacted with the Plaintiff nor sold HRT to the Plaintiff. *See* Declarations of Walter Williams, Charles Payne

and William Blount, attached hereto as Exhibits F, G and H. Moreover, any warranties would run not between these individual Defendants and Plaintiff, but rather between *their employer* and plaintiff. *E.g.*, *Hillburn v. Fletcher Oil Co.,* 495 So. 2d 613, 615 (Ala. 1986) ("Generally when an agent, acting within his real or apparent authority, enters a contract on behalf of his principal, only the principal is bound and subject to suit on the contract"). Finally, even if these Defendants could have been parties to warranties under the UCC, the UCC would have required the Plaintiff to give them notice of the breach of warranty. *See* Ala. Code § 7-2-607; *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1103 (Ala. 1983) (notice is condition precedent to action for breach of warranty); *Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc.*, 365 So. 2d 968, 971 (Ala. 1978). Plaintiff gave no notice of the purported breach of warranty to these Defendants. *See* Exhibits F, G and H.

**d.    Plaintiff has no reasonable basis for her claim of fraudulent misrepresentation against Walter Williams, III, Charles H. Payne and William Blount.**

24.    Plaintiff also cannot establish her fraudulent misrepresentation claim against these Defendants. Plaintiff claims that all "Defendants", presumably including Defendants Williams, Payne and Blount, fraudulently represented "that the hormone therapy drugs Premarin, Prempro and MPA [were] safe." Complaint, ¶ 118. In order to establish a claim for fraudulent misrepresentation, a plaintiff must present substantial evidence of: "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Brushwitz v. Ezell*, 757 So.2d 423, 429 (Ala.2000). In *In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, (S.D.N.Y. 2001), the federal court handling the multidistrict *Rezulin* litigation held that, under Alabama law, "[t]he absence of any

alleged connection between the sales representative and plaintiff's decedent therefore is fatal to all of the claims against the sales representative", including plaintiff's claims of fraudulent misrepresentation and suppression. Id. at 288.

25.    Here, as in the *Rezulin* case, there is no reasonable basis under Alabama law for the claims against Defendants Williams, Payne and Blount. There can be no fraud claim in the absence of a misrepresentation. *Boakle v. Bedwell Construction Co., Inc.*, 770 So.2d 1076, 1081 (Ala. 2000). Contrary to Plaintiff's allegation that "Defendants" misrepresented that HRT Drugs "[were] safe", the attached declarations of these Defendants establish that no such representation was made by any of them to the Plaintiff. *See* Declarations of Walter Williams, Charles Payne and Bill Blount, attached hereto as Exhibits F, G and H. Plaintiff, therefore, has no reasonable basis to support a claim of fraudulent misrepresentation against these Defendants. *See Wilson v. Vulcan Rivet & Bolt Corp.*, 439 So.2d 65, 67 (Ala. 1983) (recognizing that the plaintiff had failed to prove a prima facie case for fraud where there was an absence of proof of any statement or representation); *Ex Parte Alfa Mut. Fire Ins. Co.*, 742 So.2d 1237, 1240 (Ala. 1999) (recognizing that plaintiff's misrepresentation claims must fail where plaintiff failed to present evidence that the alleged representation occurred.).[4]

26..    Secondly, Plaintiff cannot establish her claim of fraudulent misrepresentation against these Defendants—and indeed, the Plaintiff's fraud claim should be dismissed—because she has failed to plead fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) calls for dismissal if averments of fraud are not stated "with particularity." As to all defendants, but especially as to Defendants Williams, Payne and Blount,

---

[4]    The element of reliance is likewise lacking as Ms. Graham obviously cannot rely on statements which were never made to her, and in fact she never alleges that she relied on any alleged misrepresentation. *See* Complaint, ¶s 117-120.

Plaintiff fails to allege the "time, place and purported contents of the false representations" as required under Rule 9(b). *Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995). Specifically, Plaintiff has not stated the place of the alleged fraud, the time of the alleged fraud, or specific fraudulent statements at issue. *See* Complaint, ¶s117-120. Additionally, as discussed below in paragraph 27, Plaintiff's Complaint fails to even allege the essential fraud element of reliance. *See* Complaint, ¶s 117-124. Accordingly, Plaintiff's fraud claims are barred by Rule 9(b) because she failed to plead these fraud-based claims with the requisite particularity. *See United States ex rel. Clausen v. Laboratory Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"), *cert. denied*, 537 U.S. 1105 (2003).[5]

27.    Plaintiff's fraudulent misrepresentation claim also fails to state a claim against Defendants Williams, Payne and Blount because the Plaintiff has not pled that either she or her prescribing physician[6] relied on the alleged misrepresentation made by these Defendants. *See*

---

5    Even if Alabama procedural law were to govern, Alabama Rule of Civil Procedure 9(b) is equivalent to the its federal counterpart. *Compare* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with particularity) *with* Ala. R. Civ. P. 9(b), Comment (stating that the Alabama rule is identical to the federal rule). Alabama courts have interpreted Rule 9(b)'s requirements similarly. *See Lyde v. United Ins. Co. of America*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)) (recognizing that "[t]he pleader . . . must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained.").

6    As discussed in paragraph 25 above, Plaintiff cannot maintain a direct fraud claim against any of the individual Defendants because none of them dealt directly with the Plaintiff. Although the general rule in Alabama is that "the representee who relied on the defendant's misstatement and the plaintiff who was injured must be one and the same," *Ray v. Montgomery*, 399 So.2d 230, 233 (Ala. 1980), an exception to this general rule exists when the third party misrepresents or suppresses facts with the intention that such information or lack thereof be conveyed to the Plaintiff and relied upon by her. *See Henson v. Celtic Life Ins. Co.*, 621 So.2d 1268, 1272 (Ala. 1993) (finding that plaintiff could pursue third party fraud claim against

Complaint ¶s 117-120.  Under Alabama law, an essential element of a claim for fraudulent

misrepresentation is reasonable reliance.  *Reynolds v. Hill*, 825, So.2d 100, 104-105 (Ala. 2002).

Because the plaintiff fails to allege that either she or her prescribing physician relied on the

alleged misrepresentations by Defendants Williams, Payne and Blount, her claim for fraudulent

misrepresentation fails.  *Ball v. Vogtner*, 362 So.2d 894, 897 (Ala. 1978) (affirming dismissal of

plaintiffs fraud claim where plaintiff failed to allege that she relied upon any representation by

the defendants).  This is particularly true in light of Rule 9(b), discussed above, which requires

that allegations of fraud be stated "with particularity."  *See Miller v. SCI Systems, Inc.*, 479 So.2d

718, 719 (Ala. 1985) (recognizing that facts constituting ... plaintiff's reliance must, of course,

be alleged with particularity").  Here, Plaintiff fails to even allege one of the four basic elements

of a fraudulent misrepresentation claim, and therefore, has no reasonable basis for such claim.

---

insurance agent where agent intended and expected plaintiff's mother to pass along the
misrepresentation, the misrepresentation was in fact passed along to plaintiff, and she relied on it
to her detriment). Therefore, Plaintiff is left to proceed on a theory of third party fraud, i.e., that
the individual Defendants made certain misrepresentations to and suppressed certain facts from
Plaintiff's prescribing physician with the intent that such information be passed along to and
relied upon by Plaintiff. However, Plaintiff's Complaint fails to allege either that any fraudulent
statements were ever passed along to her by her prescribing physician or that she or her
prescribing physician relied on such misrepresentations in deciding to use HRT medication.
Such failures leave the Plaintiff with no reasonable basis upon which to base her third party fraud
claims. *See Hayes v. Townsend Ford, Inc.*, 513 So.2d 1028, 1029 (Ala. 1987) (affirming
directed verdict for defendant on plaintiff's third party fraud claim where plaintiff presented no
evidence that the alleged fraudulent statement made by defendant was passed along to plaintiff);
*Ray v. Montgomery*, 399 So.2d 230, 233 (Ala. 1980) (affirming summary judgment for defendant
on plaintiff's third party fraud claim where plaintiff presented no evidence that alleged
fraudulent statement made by defendant was passed along to plaintiff). This failure also is fatal
to her claim of fraudulent suppression. *See Pegram v. Hebding*, 667 So.2d 696, 702-703 (Ala.
1995) (recognizing that the same rules applicable to third party claims for fraudulent
misrepresentation also apply to third party claims of fraudulent suppression).

   e. **Plaintiff has no reasonable basis for her claim of fraudulent suppression against Walter Williams, III, Charles H. Payne and William Blount.**

  28. In Count VI of the Complaint, Plaintiff asserts a claim for fraudulent suppression, alleging that all the defendants failed to disclose the alleged fact that the HRT drugs Premarin, Prempro and MPA were not safe and that the "Defendants were under a duty to communicate this information to Plaintiff." [Complaint, ¶ 123]. "The elements of fraudulent suppression are: (1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or of not acting." *Booker v. United Am. Ins. Co.*, 700 So.2d 1333, 1339 (Ala.1997); *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So.2d 1288, 1293 (Ala.1993).

  29. Just as Plaintiff's fraudulent misrepresentation claim is flawed due to Plaintiff's failure to allege reliance, so too is her claim for suppression. Reliance is an essential element of a claim for fraudulent suppression. *See Johnson v. Sorensen*, 2005 WL 1253829, *6 (Ala. May 27, 2005) (Exhibit J) (recognizing that "[a]lthough the term 'inducement' has often been used in the description of the fourth element of suppression, it is clear that a plaintiff's 'reasonable reliance' is an essential element of a suppression claim."). Plaintiff's complaint fails to allege that either she or her prescribing physician relied on the alleged fraudulent suppression perpetrated by any of the defendants, including Defendants Williams, Payne and Blount, Complaint ¶s 121-124, and therefore, Plaintiff has no reasonable basis upon which to base her claim of fraudulent suppression. *See Carrell v. Masonite Corp.*, 775 So.2d 121, 124 (Ala. 2000) (affirming summary judgment for defendant on plaintiffs' suppression claim where there was no

evidence that plaintiffs relied on the non-existence of the fact allegedly suppressed).

30.    Separate and apart from her failure to allege the fundamental element of reliance, Plaintiff's suppression claim also fails because Defendants Williams, Payne and Blount owed no duty of disclosure to Plaintiff. "It is well established that a party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact." *State Farm Fire and Casualty Co. v. Owen*, 729 So.2d 834 (Ala. 1998). In *Owen*, the Alabama Supreme Court held that the existence of a duty to disclose is a question of law to be determined by the trial judge, and that the trial judge must review the circumstances surrounding the parties' relationship in determining the issue. *Id.* at 839. An obligation to disclose arises only where the parties have a confidential relationship or where other "special circumstances" exist mandating the imposition of a duty to disclose. *Id.* at 837. Because neither situation exists here, Walt Williams, Charles Payne and Bill Blount owed no duty to the Plaintiff to disclose the alleged facts, and therefore, the Plaintiff has no reasonable basis for her suppression claim against them.

31.    As an initial matter, there is no confidential relationship between the Plaintiff and these Defendants, and the Plaintiff does not contend otherwise.[7]    Furthermore, no "special circumstances" are present to trigger a duty to disclose. While the Alabama Supreme Court has identified six factors which must be analyzed by the trial court in determining whether "special

---

7    Alabama courts have defined a confidential relationship as "one in which one person occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interests in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed...." *Bank of Red Bay v. King*, 482 So.2d 274, 284 (Ala. 1985). Such a relationship does not exist here, where these Defendants had never dealt with Plaintiff, and did not know that she allegedly took HRT medication until the filing of her lawsuit. See Exhibits F, G and H.

circumstances" exist in a given case which would give rise to a duty to disclose: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances," *Owen*, 729 So.2d at 842-843, foremost in this analysis is the relationship of the parties.

32.    The concept of a duty to disclose "requires a <u>relationship</u> between two or more parties, a <u>relationship</u> that can be shown only through a history of contacts, conversations and circumstances." *Owen* at 839 (emphasis added).  "Before an obligation to disclose can be imposed under the 'particular circumstances' of a case, <u>the relationship between the parties</u>, while not necessarily required to be confidential, must nonetheless be such that a disclosure of material information is dictated." *Trio Broadcasters, Inc. v. Ward*, 495 So.2d.621, 624 (Ala. 1986) (emphasis added). "Because of the absence of <u>any relationship</u> between the [plaintiffs] and the [defendant], we find as a matter of law that the [defendant] owed no duty of disclosure to the [plaintiffs]." *Keck v. Dryvit Systems, Inc.*, 830 So.2d 1, 11 (Ala. 2002) (emphasis added).

33.    Here there is no relationship at all between the Plaintiff and Defendants Williams, Payne or Blount.  These Defendants had no contact whatsoever with Plaintiff and had no knowledge that she allegedly was prescribed HRT medication.  Exhibits F, G and H.  The Alabama Supreme Court has repeatedly held that in the absence of a relationship between the parties on which to base a duty to disclose, the defendant could only be under a duty if the plaintiff made a specific request to the defendant for information. *Ex Parte Farmers Exchange Bank*, 783 So.2d 24, 28 (Ala. 2000); *see also Mason v. Chrysler Corp.*, 653 So.2d 951, 954-955 (Ala. 1995) (recognizing that "[w]hen the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the

information is not requested."); *see also Doss v. Serra Cheverolet, Inc.*, 781 So.2d 973 (Ala. Civ. App. 2000) (holding that where the plaintiff did not make a direct inquiry as to whether vehicle was new, dealership owed no duty to disclose fact that car was a demonstrator to her, in light of the fact that plaintiff merely provided the down payment on the car and did not contract to purchase the vehicle). Here, Defendants Williams, Payne and Blount had no contact with Plaintiff and, therefore, she could not have made any specific requests or inquiries to them. They, therefore, owed her no duty to disclose and the Plaintiff has no reasonable basis for her fraudulent suppression claim against them.

## THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED

34.     The amount in controversy requirement clearly is satisfied in this case. Although the Complaint does not specify a monetary demand, Plaintiff seeks unspecified compensatory and punitive damages relating to alleged personal injuries including breast cancer. Complaint at ¶ 1. Cases in Alabama involving injuries alleged to have been caused by medical products with allegations similar to those in Plaintiff's complaint have resulted in verdicts substantially in excess of $75,000. *See, e.g., Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (addressing on appeal an award of $400,000 in compensatory damages and $5,000,000 in punitive damages in a medical product liability case); *Benford v. Richard's Medical Co.*, 792 F.2d 1537 (11th Cir. 1986) (discussing an award of $165,000 in compensatory and $100,000 in punitive damages in a medical product liability case).

35.     Reported verdicts and settlements specifically having to do with breast cancer reflect that such claims likely exceed $75,000. *See also Rozar v. Kaiser Foundation Healthcare*, 21 No.8 Verdicts Settlements & Tactics ("VST") 348 (Westlaw 2000) ($842,680 arbitration award for delay in diagnosing breast cancer); *Howstow v. Rosenburg*, 21 No.2 VST 65 (Westlaw

2000) ($750,000 verdict in suit alleging failure to diagnose breast cancer); *Mathews v. Bloy*, 19 No.4 VST 141 (Westlaw 1999) ($400,000 awarded in suit alleging failure to diagnose breast cancer); *Ruffin v. Medical Ctr. Radiology Group*, 15 No.7 VST 238 (Westlaw 1995) ($2.6 million awarded to plaintiff in suit alleging failure to diagnose breast cancer); *Greeley v. Slepian*, 12 No.8 VST 280 (Westlaw 1992) ($1.4 million arbitration award for failure to diagnose breast cancer)[Composite Exhibit I].

36.    Accordingly, the amount in controversy exceeds $75,000.00, exclusive of interests and costs. *See, e.g., Tapscott*, 77 F.3d at 1359 (11th Cir. 1996) (when plaintiffs make an unspecified claim for damages, removing party need only show by a preponderance of the evidence that amount in controversy exceeds jurisdictional limit); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in diversity cases, punitive damages must be considered"); *Swafford v. Transit Cas. Co.*, 486 F. Supp. 175, 177 (N.D. Ga. 1980) ("It is clear that in determining the jurisdictional amount in controversy, punitive damages are to be counted") (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238 (1943)).

### THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

37.    As set forth above, this Notice of Removal is filed within thirty days of service on the first served Defendant.  28 U.S.C. § 1446(b).  All properly joined and served Defendants consent to and join in this Notice of Removal.

38.    Defendants have sought no similar relief.

39.    The prerequisites for removal under 28 U.S.C. § 1441 have been met.

40.    Copies of all process, pleadings, orders and other papers on file in the state court action are attached to this Notice of Removal and labeled as Exhibit L.

41.    Pursuant to 28 U.S.C. § 1446(d), written notice of the removal of this action has been given simultaneously to Plaintiff's counsel, and a Notice to Clerk of Removal is simultaneously being filed with the Circuit Court in and for Bullock County, Alabama. A true and correct copy of this Notice is attached hereto as Exhibit M.

42.    If any question arises as to the propriety of the removal of this action, the removing Defendants request the opportunity to present a brief and oral argument in support of their position that this case is removable.

WHEREFORE, Wyeth, desiring to remove this case to the United States District Court for the Middle District of Alabama, Northern Division, being the district and division of said Court for the County in which said action is pending, pray that the filing of this Notice of Removal with this Court and the filing of the Notice of Filing of Notice of Removal with the Clerk of the Circuit Court of Bullock County, Alabama, shall effect the removal of said suit to this Court.

Lee H. Copeland (COP004)
Mitchell H. Boles (BOL029)
J. David Martin (MAR120)
**One of the Attorneys for Defendants**
 **Wyeth (a/k/a Wyeth, Inc.) and**
 **Wyeth Pharmaceuticals Inc.**

**OF COUNSEL**:

Lee H.Copeland
Mitchel H. Boles
J. David Martin
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, Alabama 36101-0347
Telephone:      (334) 834-1180
Facsimile:      (334) 834-3172

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of July, 2005, I have served a copy of the above and foregoing document upon the following counsel of record by First Class Mail, postage prepaid and properly addressed:

Andy D. Birchfield, Jr.
Ted G. Meadows
Melissa A. Prickett
Beasley, Allen, Crow, Methvin,
    Portis & Miles, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone:    334-269-2343
Facsimile:    334-954-7555
**Attorneys for Plaintiff -**


Qualitest Pharmaceuticals, Inc.
c/o William S. Propst, Sr.
130 Vintage Drive Northeast
Huntsville, Alabama 35011

Bill Blount
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

Williams Walter, III
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

Jennifer Andrews
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

Charles H. Payne
c/o Donald R. Jones, Jr.
2000 Interstate Park Drive
Montgomery, Alabama 36109

Bill Richards
c/o Wyeth d/b/a Wyeth, Inc.

Five Giralda Farms
Madison, NJ 07940

_____
Of Counsel