# EXHIBIT C

**Westlaw.**

82 F.Supp.2d 1326   Page 1
82 F.Supp.2d 1326
**(Cite as: 82 F.Supp.2d 1326)**

▷

**Motions, Pleadings and Filings**

United States District Court,
S.D. Alabama,
Northern Division.
Evelyn JOHNSON, as Administratrix of the Estate of
Edward L. Johnson,
Plaintiff,
v.
GENERAL MOTORS CORPORATION, et al.,
Defendants.
**No. Civ.A. 97-0046-BH-C.**

July 22, 1997.

State court action was brought against automobile manufacturer and used car dealer to recover for death of buyer as result of allegedly defective seatbelt system. After removal to federal court, plaintiff moved to remand, and dealer moved for summary judgment. The District Court, Hand, Senior District Judge, held that: (1) dealer was not liable for defective seatbelt system; (2) dealer's disclaimer was not rendered ineffective as to defective seatbelt system due to fact that seller extended power train warranty; and (3) original seller was not liable to subsequent buyer.

Motion for summary judgment granted, motion to remand denied.

West Headnotes

**[1] Products Liability ⚷35.1**
313Ak35.1
Under Alabama law, seller of used automobile was not liable for automobile's defective seatbelt system, absent evidence that defect could have been discovered by seller during its inspection of vehicle or that seller's opportunity to inspect and discover assumed defect was superior to that of buyer.

**[2] Products Liability ⚷35.1**
313Ak35.1
Claims of buyer of used automobile against seller for negligence and wantonness as result of failure to discover defect in seatbelt system were subsumed and governed by Alabama Extended Manufacturer's Liability Doctrine (AEMLD).

**[3] Products Liability ⚷37**
313Ak37
Under Alabama law, used automobile seller did not have duty to warn, either verbally or by provision of owners manual, of defects allegedly contained in automobile, unless it knew or should have known that such alleged defects could create danger when used in its intended manner.

**[4] Sales ⚷267**
343k267
Under Alabama law, "as is" disclaimer by seller of used automobile was not rendered ineffective as to defective seatbelt system due to fact that seller extended power train warranty to buyer.

**[5] Products Liability ⚷35.1**
313Ak35.1

**[5] Products Liability ⚷39**
313Ak39
Under Alabama law, original seller of automobile was not liable to subsequent buyer from third party for defective seatbelt system, absent evidence that original seller altered vehicle in manner that contributed to alleged defects, had any input into design and construction of vehicle, had knowledge of defects, or had any direct contact with buyer.
*1327 William H. Traeger, III, Taylor T. Perry, Jr., Manley, Traeger & Perry, Demopolis, AL, Jack B. Hood, D. Bruce Petway, Lucas, Alvis, Wash, Jeffrey E. Friedman, Friedman, Leak & Bloom, P.C., Birmingham, AL, for Plaintiff.

William S. Poole, Jr., Demopolis, AL, Robert D. Hayes, Philip E. Holladay, Derek J. Hardesty, King & Spalding, Atlanta, GA, for Defendants.

**ORDER**

HAND, Senior District Judge.

This action is before the Court on plaintiff's motion to remand (Doc. 3), as supplemented (Doc. 6), and motion for leave to amend (Doc. 8), as supplemented (Doc. 12). Inasmuch as the removal of this action from the Circuit Court of Marengo County, Alabama, was predicated on the alleged fraudulent joinder of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 F.Supp.2d 1326
82 F.Supp.2d 1326
(Cite as: 82 F.Supp.2d 1326)

Page 2

the resident defendant Rahal Buick, Inc. (Rahal), and because the motion to remand specifically addresses Rahal's right to summary judgment as a matter of law, the Court will also consider at this time the pending motion for summary judgment filed by Rahal in the state court prior to removal. Upon consideration of these motions, defendants' responses in opposition thereto (Docs. 10, 11, 13 and 14), the various letter briefs from the parties [FN1] and all pertinent portions of the record, the Court concludes that Rahal is entitled to judgment as a matter of law and is thus considered fraudulently joined with respect to the diversity jurisdiction of this Court; the action was properly removed and plaintiff's motion to remand is due to be denied; and plaintiff's motion to amend, which would destroy the diversity which existed at the time of removal, is otherwise improper and thus due to be denied.

>   FN1. The Court has considered the letter from plaintiff's counsel dated May 8, 1997; the letter from General Motors Corporation's counsel dated May 20, 1997; and the letter from Rahal Buick's counsel dated May 29, 1997.

[1] This product liability action arises out of an automobile accident that occurred on November 22, 1995, when plaintiff's decedent, Mr. Edward Johnson, left the roadway while driving a 1987 Chevrolet Blazer. This accident occurred some six years after the plaintiff purchased the used Chevrolet Blazer from Rahal Buick, Inc. (Rahal). As the plaintiff has acknowledged, Rahal's motion for summary judgment is based upon its "affirmative defense of 'casual [sic] relation' allowed to sellers of finished products under Alabama Extended Manufacturers Liability Doctrine and the 'as is' language in the purchase documents as they relate to the breach of warranty claim." Plaintiff's Supplemental Brief to the Motion to Remand at p. 1. Plaintiff also concedes:

>   The affirmative defense of proximate cause or the closed container defense in a product liability action is based on the premise that a seller of a finished product is not responsible if, in fact, they had no nexus to the defect.

Id. at p. 5-6, citing, Allen v. Delchamps, Inc., 624 So.2d 1065, 1069 (Ala.1993) ("To establish the defense of a lack of causal *1328 relation, the defendant may show 'that there is no causal relation in fact between his activities in connection with handling the product and its defective condition'."). The Allen court further described the defendant's burden of proof as follows:

>   One way to establish this lack of a causal relation is for the defendant to show:
>   "[T]hat he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer."

Allen, 624 So.2d at 1069, quoting, Atkins v. American Motors Corp., 335 So.2d 134, 143 (Ala.1976). Plaintiff does not dispute Rahal's contention that it "performed no service or body work on the vehicle, did not modify the vehicle in any way and had absolutely no input in the design and manufacturing process." Rahal's Response to the Motion to Remand at p. 8. Although the plaintiff does allege that "Rahal did, in fact, inspect the defective seatbelt system before selling the vehicle to plaintiff" (Plaintiff's Supplemental Brief in Support of Motion to Remand at p. 6), plaintiff has neither presented any evidence, nor even alleged sufficient facts, to support her mere assumption that an unidentified defect in the seatbelt system [FN2] could have been discovered by Rahal during its inspection of the Blazer and that Rahal's opportunity to inspect and discover this assumed defect was superior to that of the plaintiff and her decedent.

>   FN2. Although not specifically identified or discussed in plaintiff's briefs, the affidavit of Thomas Horton, an Automotive Engineer, indicates only that "[t]he **damage pattern or marking of the seatbelt latchplate** indicate that the seatbelt buckle released the latchplate during Mr. Johnson's rollover accident allowing him to be thrown from the vehicle." Horton Affidavit at Exhibit 2, Plaintiff's Evidentiary Submissions (emphasis added). Thus it was Mr. Horton's opinion that "the seatbelt system in the Chevrolet Blazer was defective and unreasonably dangerous." Id. No evidence has been proffered, and no facts alleged, from which any inference can be drawn that a defect in the seatbelt system was patent and should have been discovered by Rahal on its alleged inspection prior to the sale of the Blazer to the plaintiff.

[2] With respect to plaintiff's claims for negligence and wantonness, plaintiff does not, and cannot, refute

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

82 F.Supp.2d 1326
82 F.Supp.2d 1326
(Cite as: 82 F.Supp.2d 1326)

Page 3

Rahal's argument that such claims are subsumed and governed by the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). *See e.g., Veal v. Teleflex, Inc.* 586 So.2d 188, 190-91 (Ala.1991) (Plaintiff's defective product claim held to be a claim under AEMLD and, thus, trial court did not err in refusing to charge the jury on negligence and wantonness.); *Pitts v. Dow Chemical Co.,* 859 F.Supp. 543, 550-51 (M.D.Ala.1994) (Plaintiff's negligence claim related to an alleged unreasonably unsafe product held not to state a claim distinct from AEMLD.). Instead, plaintiff erroneously relies on tort cases which involve no product liability claim.

Similarly, plaintiff does not even attempt to contradict Rahal's contention that her "failure to warn" claim is not distinct from her AEMLD claim. *See e.g., King v. S.R. Smith, Inc.,* 578 So.2d 1285, 1287 (Ala.1991) ("Under the AEMLD, if a manufacturer or seller places goods on the market that are imminently dangerous when put to their intended purpose and the defendant knows or should know the goods can create a danger when used in the customary manner, the defendant must exercise reasonable diligence to make such danger known to the persons likely to be injured by the product."); *Outlaw v. Firestone Tire & Rubber Co.,* 770 F.2d 1012, 1014 (11th Cir.1985) ("Alabama law recognizes *1329 that a failure to warn can provide the basis for AEMLD liability."); *Campbell v. Robert Bosch Power Tool Corp.,* 795 F.Supp. 1093, 1096 (M.D.Ala.1992) ("The Campbell's failure to warn claim is predicated on the AEMLD."). Consequently, plaintiff's failure to warn claim against Rahal is not independent of the AEMLD and the affirmative defenses available thereunder.

[3] In addition, the Court agrees that Rahal cannot be deemed to have had a duty to warn, either verbally or by the provision of an owners manual, of defects allegedly contained in the Chevrolet in question unless it knew or should have known that such alleged defects could create a danger when used in its intended manner. *Outlaw,* 770 F.2d at 1014; *Campbell,* 795 F.Supp. at 1096. Rahal is a distributor, not a manufacturer, of the used Blazer in issue. Plaintiff has submitted no evidence beyond pure supposition that Rahal had any knowledge of the defects alleged by the plaintiff in this litigation. Rahal's position is thus similar to parties to whom the "learned intermediary doctrine" is applied. *See e.g., Toole v. McClintock,* 999 F.2d 1430, 1433 (11th Cir.1993) (A surgeon's duty to warn is predicated on the warning he received from the manufacturer of the product alleged to be defective).

[4] Plaintiff's breach of warranty claims must also be addressed under AEMLD. *See e.g., Yarbrough v. Sears, Roebuck & Co.,* 628 So.2d 478, 483 (Ala.1993) (Claim that a product is unreasonably dangerous "is not a question properly addressed in a claim alleging breach of warranty," but should be addressed in a claim under AEMLD.); *Shell v. Union Oil Co.,* 489 So.2d 569, 571 (Ala.1986) (Affirmed summary judgment in favor of suppliers with respect to claim for breach of implied warranty of merchantability because claim that a product is unreasonably dangerous "is not a question properly addressed in an action brought under the provisions of the U.C.C." since it is more appropriately addressed under AEMLD.). Plaintiff neither acknowledges nor challenges the applicability of *Yarbrough* and *Shell.* Instead, plaintiff simply asserts that the "as is" disclaimer used by Rahal was ineffective because Rahal extended a "thirty day/three thousand mile power train" warranty. Such a contention is specious and clearly not supported by the one case cited by the plaintiff in support thereof, namely: *Auburn Ford, Lincoln Mercury, Inc. v. Norred,* 541 So.2d 1077 (Ala.1989). [FN3]

> FN3. Although the *Norred* court concluded that "in light of [the buyer's purchase of an extended] service contract, Auburn Ford's ['as is'] disclaimer is ineffective to now exclude any implied warranties," the court relied on the federal Consumer Product Warranty Act, 15 U.S.C. § 2308, which restricts a suppliers right to disclaim an implied warranty to a consumer if the supplier "enters into a service contract with the consumer which applies to such consumer product." The Consumer Product Warranty Act does permit the implied warranty to "be limited in duration to the duration of a written warranty of reasonable duration." 15 U.S.C. § 2308(b). As applied to the case at bar, it is undisputed that plaintiff expressly chose not to purchase an extended service contract with Rahal. To the extent Rahal's warranty of the "power train" could possibly impact its "as is" disclaimer to the plaintiff, a doubtful proposition, any implied warranty would have been limited to "thirty day[s]/three thousand mile[s] under 15 U.S.C. § 2308(b)".

In her most recent "letter brief" dated May 8, 1997,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff refers to the attached memorandum opinion in *Nance v. Toyota Motor Corp.*, Civil Action No. CV 97-S-0459-M (N.D.Ala. April 14, 1997), in which it was held that "the principles of liability under AEMLD do not limit its applicability only to sellers of new products." *Nance*, slip op. at 6. Such a proposition has little bearing in this action. Rahal has never contended that it lacked liability because it sold a used as opposed to new vehicle to the plaintiff. *1330 Instead, it has always been Rahal's position that it is entitled to summary judgment and dismissal from this litigation because its activities with respect to the alleged defective Chevrolet Blazer lack any causal relation to the plaintiff's injuries. As stated previously, plaintiff does not dispute that Rahal performed no service or body work on the Blazer, did not modify the vehicle in any way and had absolutely no input in the design and manufacturing process. In addition, plaintiff has failed to proffer any evidence to show that Rahal had knowledge of any alleged defect(s) in the Blazer or that the alleged defects were of a nature that Rahal's opportunity, as a mere distributor of a finished product, to discover them was superior to that of the plaintiff. Consequently, Rahal is entitled to summary judgment as to each of plaintiff's claims and, there being no possibility of stating claims such as these against Rahal, Rahal's joinder must be considered fraudulent for purposes of determining the existence of diversity jurisdiction. This action was, therefore, properly removed by defendant General Motors Corporation.

[5] In view of the above, the addition of a non-diverse defendant such as Solomon Motor Company and Solomon Motor Company d/b/a Solomon Chevrolet Geo (collectively "Solomon") as sought by plaintiff in her motion to amend would destroy the diversity jurisdiction found by this Court to have existed at the time of removal. The removal statutes provide that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Upon consideration of the matter, the Court concludes that the motion to amend is due to be denied. The proposed defendant, Solomon, is identified only as "the original sell[er] of the vehicle as a new sport utility vehicle on May 29, 1987 to Jerry Gilmore." Solomon therefore sold the Blazer as new approximately eight and one half years prior to the accident at issue in this litigation. As was true with respect to Rahal, the proposed amended complaint does not assert that Solomon altered the vehicle in any manner which contributed to the alleged defects,

had any input into the design and construction of the vehicle, had any knowledge of the alleged defects or had any direct contact with the plaintiff or her decedent. For the same reasons that prohibit a claim against Rahal, plaintiff cannot state the requisite AEMLD claims against Solomon. Plaintiff certainly cannot state against Solomon either a "failure to warn" claim or breach of warranty claims when plaintiff does not contend that, as a mere distributor of a final new product, Solomon ever had any contact with either the plaintiff, her decedent or Rahal who sold the same vehicle as a used vehicle over two years later on November 7, 1989. Consequently, joinder of Solomon under these circumstances would be improper.

For the reasons stated above, it is **ORDERED** that Rahal's motion for summary judgment be and is hereby **GRANTED** and that, at the conclusion of this litigation, a judgment be entered in favor of Rahal Buick, Inc. and against the plaintiff, Evelyn Johnson, the plaintiff to have and recover nothing of this defendant. It is **FURTHER ORDERED** that plaintiff's motions to remand (Doc. 3) and for leave to amend (Doc. 8), as supplemented (Docs. 6 and 12, respectively), be and are hereby **DENIED.**

This action is now **REFERRED** to the Magistrate Judge for the entry of an appropriate Rule 16 Scheduling Order. Plaintiff's motion to stay (Doc. 16) pending ruling on her motion to remand is now **MOOT.**

82 F.Supp.2d 1326

**Motions, Pleadings and Filings (Back to top)**

• 2:97CV00046 (Docket) (Jan. 21, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.