# EXHIBIT K

21 No. 8 VST 348                                                                                                Page 2
(Cite as: 21 NO. 8 Verdicts, Settlements & Tactics 348)

Verdicts, Settlements & Tactics
August 2001

**Medical Liability**

\*348 $842,680 ARBITRATION AWARD FOR DELAY IN DIAGNOSING **BREAST CANCER**

Copyright © 2001 West Group

In late January 1997, claimant, then a 35-year-old production assistant for KABC TV, discovered a lump in the upper outer quadrant of her left breast on self examination. On February 5, 1997, she brought this lump to the attention of a Kaiser Urgent Care physician, Dr. Albert Schuh. Dr. Schuh was able to appreciate the mass, so he arranged for an immediate mammogram and for a surgical consultation. The mammogram was correctly read as normal. But, because of the presence of a clinical mass and a negative mammogram, an ultrasound was appropriately ordered. That study was accomplished on February 18, 1997 and was read by Dr. Alan Karpman as normal. Claimant saw the Kaiser surgeon, Dr. Manual Santos on February 26, March 17 and May 19, 1997. Dr. Santos was unable to appreciate a mass. In the absence of such a finding, and with a negative mammogram and ultrasound, he advised her to return "PRN".

In April 1998, claimant believed the mass to have grown. She returned to see Dr Santos on April 20, 1998. Dr. Santos charts an 8 x 8 cm mass. Biopsy revealed a high grade infiltrating ductal carcinoma.

Mrs. Rozar transferred her care to UCLA. She underwent neoadjuvant (i.e., preoperative) chemotherapy, which shrunk the tumor and allowed for later breast-conserving surgery. That surgery revealed the presence of residual microscopic cancer in the breast, as well as two metastatic axillary lymph nodes.

Mrs. Rozar underwent further chemotherapy and radiation. Close follow up at UCLA has not revealed recurrent disease.

It was contended that Dr. Karpman misread the February 18, 1997 ultrasound, which issue respondent conceded. Claimants contended that, in February 1997, the cancer was 1.3 x 1.3 x 2.0 centimeters in size (which is what the misread ultrasound showed). Claimants contended that Mrs. Rozar was likely axillary node negative, and that she would have stood an 85% likelihood of cure of her disease.

As of April 1998, this high-grade tumor had grown considerably. The primary tumor was on the order of 6-8 cm in size. It was contended that Mrs. Rozar likely \*349 had 5-6 metastatic axillary lymph nodes. This was not known for sure, since her surgery was not undertaken until after the completion of neoadjuvant chemotherapy. In any event, it was argued that Mrs. Rozar's ten year disease free survival probability, by virtue of the growth of the tumor, was on the order of 20% to 25%.

Respondents contended that Dr. Santos, on May 19, 1997, instructed her to return in "June". (Claimants contended that his note said "PRN".) Respondents claim that Mrs. Rozar was comparatively negligent, and that any damage which occurred subsequent to June 1997 was her own fault.

Respondents also contended that, notwithstanding any delay, Mrs. Rozar's likelihood of cure of her disease is on the order of 60% to 65%.

Injury: Two cycles of chemotherapy, instead of one. Inability to bear children (disputed). Emotional distress by virtue of the progression of disease and worsening of prognosis.

Claimed loss of earnings of $30,000.00, and $11,000.00 in out of pocket medical

21 No. 8 VST 348                                                      Page 3
(Cite as: 21 NO. 8 Verdicts, Settlements & Tactics 348)

expenses. Claimants also argued that, by virtue of the fact that she is likely to recur, they were entitled to her "lost years" of income. Claimant now earns $40,000.00 annually.

Claimants also argued for loss of consortium damages, and asserted that they were entitled to loss of future household services as a component of the consortium claim. Result: $842,680 binding arbitration award, consisting of the following: General damages - $250,000; Loss of Consortium - $150,000; Past Specials - $41,735; Future Medical Expenses - $100,000 (Present Cash Value - $94,376); Loss of Earnings - $306,569 (Present Cash Value); Household Services - 0.

Settlement Negotiations: Demand: $1,200,000.00 (Including potential wrongful death case.).Offer: $220,000.00 (Including potential wrongful death case.

Plaintiff's Expert Witnesses: John S. Link, M.D., Breast Oncologist, Long Beach, Cal.; Thomas W. Broderick, M.D., Radiologist, Orange, Cal.; Darryl Zengler, M.A., Forensic Economist, Pasadena, Cal.

Defendant's Expert Witnesses: Gary Furman, M.D., Surgeon, Los Angeles, Cal.; Elliot Hinkes, M.D., Oncologist, Inglewood, Cal.; R. James Brenner, M.D., Radiologist, Santa Monica, Cal.; Ted Vavoulis, Forensic Economist, Pasadena, Cal.

Plaintiff's Attorneys: Daniel M. Hodes, Jennifer Johnson of Lopez, Hodes, et al., Newport Beach, Cal.

Defendant's Attorney: Casey Yim of Pivo, Halbreich, Cahill & Yim.

Rozar v. Kaiser Foundation Healthcare, (Arbitration, Orange Cty. Cal. Dec. 8, 2000)

21 NO. 8 Verdicts, Settlements & Tactics 348

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Verdicts, Settlements & Tactics
February 2001

Medical Liability

*65 $750,000 VERDICT IN SUIT ALLEGING FAILURE TO DIAGNOSE BREAST CANCER

Copyright © 2001 West Group

Shari Hwostow, a 36-year-old homemaker, reported a breast lump to her gynecologist, Defendant Dr. Rosenburg, which was diagnosed by Dr. Rosenburg as fibrocystic changes. At trial, Mrs. Hwostow testified that she was repeatedly assured that her breast lesion was fibrocystic changes rather than cancer, a condition for which she should not be concerned. She therefore did not seek another opinion for 16 months after having been seen in the Defendant's office four times during four consecutive months.

Defendant testified at trial that he cautioned the Plaintiff that she might have cancer of the breast rather than fibrocystic change; and she should report back to him if the breast lesion got bigger or remained the same.

About a year and a half later, her beast lump enlarged, her nipple inverted and she was diagnosed with metastatic breast cancer. She was assigned a poor prognosis.

Injury: Metastatic breast cancer.

Result: $750,000 jury verdict, consisting of $500,000 to Shari Hwostow and $250,000 to her husband for loss of consortium.

Plaintiff's Expert Witnesses: Michael Ross, M.D., obstetrics, Mclean, Va.; Harold Oberman, M.D., pathology, Michigan; Neal Rosen, M.D., oncology, Englewood, N.J.

Defendant's Expert Witnesses: Kenneth McCarty, M.D., pathology, Pittsburgh, Pa.; Neal Rosenshein, M.D., gynecology/oncology, Baltimore, Md.

Plaintiff's Attorney: Harry S. Cohen, Pittsburgh, Pa.

Defendant's Attorney: Dianne Barr-Quinlin and Korry A. Green, Pittsburgh, Pa.

Howstow v. Rosenburg, No. GD99-5966 (Allegheny Cty. Ct. of Common Pleas, Pittsburgh, Pa. 2000)

21 NO. 2 Verdicts, Settlements & Tactics 65

END OF DOCUMENT

Verdicts, Settlements & Tactics
April 1999

Medical Liability

*141 PHYSICIAN FOUND LIABLE FOR FAILURE TO DIAGNOSE BREAST CANCER

Copyright © 1999 West Group

Facts: Plaintiff, Barbara Mathews, a 46-year-old personal banking representative and her husband McClure Mathews, a fireman, sued the Defendant Richard L. Bloy, M.D., obstetrician/gynecologist for failure to diagnose breast cancer over a 2 1/2 year period of time.

Plaintiff reported the presence of a visible, palpable 2 cm. lump in her right breast to the Defendant in March of 1994. Defendant ordered no mammogram but told her to return in three months for a recheck. She returned in three months and the Defendant attempted an aspiration biopsy which revealed no malignant cells, but suggested papillamatosis, a benign condition and indicated that "clinical correlation was required." The Defendant reported to the Plaintiff that this biopsy confirmed the absence of malignancy and that Plaintiff was to return in nine months for a recheck. Plaintiff's interim mammogram and sonogram were normal, but the palpable visible lump began to increase in size. Plaintiff returned after nine months and Defendant reassured her, ordering that she come back in three months for a recheck. Defendant noted the lump was increasing in size and did a second attempt at an aspiration but again failed to obtain fluid. He discarded the "cells" obtained without sending them to the lab for diagnosis. He reassured the Plaintiff and ordered that she return in one year. Plaintiff returned, and the palpable, visible lump had grown to 3.5 centimeters. The Defendant Physician ordered no tests, but ordered that she return for a recheck. Plaintiff became concerned about the growing lump even though she had been informed that it was benign and requested that the Defendant Physician remove it. He declined to do it saying the decision to biopsy or remove the lump would depend on an upcoming mammogram. Plaintiff's mammogram showed the presence of potential malignancy, and a biopsy was performed revealing infiltrating ductal carcinoma.

The Plaintiff opted for a mastectomy over a lumpectomy due to the total tumor burden which was in excess of 4 centimeters. Although the operative note reflected that the surgeon removed lymphatic tissue, no lymph nodes were contained in the sample reviewed by the pathology lab so no determination could be made as to whether metastasis to the lymph nodes had occurred. Plaintiff underwent chemotherapy and has been cancer-free for two years since the diagnosis.

Injury: Plaintiff claimed damages for increased chemotherapy, a mastectomy rather than lumpectomy and a decreased chance of survival due to the increase in size of the tumor from 1.5 cm. to over 4 cm. during the *142 2 1/2 years that Plaintiff was treated by the Defendant.

Result: The jury awarded $400,000 in past damages to the Plaintiff, but declined to award future damages or loss of consortium for the Plaintiff's husband. Plaintiffs' Motion for New Trial on the issues of future damages and the loss of consortium are pending.

Plaintiff presented to the Defendant a total of six times over two and one-half years with a palpable, visible lump. During the first two visits in 1994, Defendant was an employee of a professional corporation which was a co-defendant with Lee Memorial Health Systems, where Defendant Physician became employed in 1995. The jury was requested to and did apportion the amount of damages caused by the negligence occurring while the doctor was employed by his P.A. (60%) and the damages caused while he was employed by Lee Memorial Health Systems (40%).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

19 No. 4 VST 141                                                                                          Page 3
(Cite as: 19 NO. 4 Verdicts, Settlements & Tactics 141)

   Plaintiff's Expert Witnesses: Dennis L. Citrin, M.D., Oncologist, Chicago, Illinois; G. W. Eklund, M.D., Radiology, Bellevue, Washington; Alexander P. Rosin, M.D., Obstetrics/Gynecology, Jacksonville, Florida.

   Defendant's Expert Witness: James L. Connolly, M.D., Pathologist, Boston, Massachusetts; Arnold Blaustein, Oncologist, Miami Beach, Florida; John Ellington, M.D., Gynecologist, Lakeland, Florida; Michael Foley, M.D., Radiologist, Tampa, Florida.

   Plaintiff's Attorneys: Elizabeth H. Faiella, Winter Park, Florida; William Shaffer of Shaffer and Associates, Fort Myers, Florida

   Defendant's Attorneys: Lynne E. Denneler of George, Hartz, Lundeen, Flagg & Fulmer, Ft. Myers, Florida (for Dr. Bloy); Mark Haskins of Lutz, Webb, Partridge & Bobo, P.A., Ft. Myers, Florida (for Lee Memorial).

   Mathews v. Bloy, No. 98-273-CA-LG (Lee County Circuit Court, Florida Jan. 28, 1999)

19 NO. 4 Verdicts, Settlements & Tactics 141

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

15 No. 7 VST 238            Page 2
15 NO. 7 Verdicts, Settlements & Tactics 238
(Publication page references are not available for this document.)

Verdicts, Settlements & Tactics
July 1995

Medical Liability

PHYSICIANS FOUND LIABLE FOR FAILURE TO DIAGNOSE BREAST CANCER

Copyright © 1995 by Shepard's/McGraw-Hill, Inc.

Failure to Investigate Microcalcifications

On December 12, 1992, a 53-year-old woman underwent a mammogram following a routine physical examination by her gynecologist. No abnormalities were revealed in physical examinations by the both the gynecologist and by the radiologist who performed the mammogram. Screening mammograms were interpreted by the radiologist who testified that she probably saw microcalcifications in the right breast and certainly saw cysts in the left breast. The radiologist ordered follow-up for the cysts in the left breast, but testified that the microcalcifications were not suspicious enough to warrant further investigation. Seven days later, the plaintiff returned for a physical exam and bilateral sonogram for the investigation of cysts only. She was assured by the radiologist, who read the sonograms, that she had nothing to worry about. Six and one half months later, plaintiff discovered a 3.5 centimeter lump in her right breast, which was diagnosed seven months post-mammogram as infiltrating ductal carcinoma.

Plaintiff sued the radiologist and her radiology group. It was alleged that the failure to identify and investigate the calcifications deviated from the accepted standard of care. It was alleged that defendant should have ordered magnification views, which would have led to a biopsy and diagnosis. It was further alleged that the failure to identify and investigate the microcalcifications was negligent, and that plaintiff's chance of survival would have been in excess of 80% had a timely diagnosis been made.

The defense contended that the failure to investigate the microcalcifications did not constitute negligence. The defense argued that the failure to observe the microcalcifications was within the accepted standard of care based on the variability in skill and interpretation of mammograms. The defendant's experts further argued that even if seen, and even if commonly recognized as a sign of potential malignancy, radiologists cannot be expected to investigate every abnormality on a woman's mammogram. The defense contended that the microcalcifications were not investigated because they did not represent a significant change form a previous mammogram. Finally, the defense contended that plaintiff's chances of survival had been reduced only from 45% to 35%.
Injury: Plaintiff underwent pre-operative chemotherapy, modified radical mastectomy of the right breast, radiation, and she continues on hormone therapy. Plaintiff's treating oncologist testified that plaintiff had only a 20% chance of a 5 year survival without recurrence of cancer, which will be fatal if and when it occurs.
Result: A jury found in favor of plaintiff and awarded $2.6 million to plaintiff and $750,000 to plaintiff's husband for loss of consortium. The award consisted of $1 million for past pain and suffering, $1.6 million for future pain and suffering.
Plaintiff's Expert Witnesses: Dennis Citrin, M.D., Chicago, Ill.; G.W. Eklund, radiologist, Peoria, Ill.; Ian Lande, M.D., radiologist, Washington, D.C.
Defendant's Expert Witnesses: Carol Lee, M.D., radiologist, Yale University Hospital, New Haven, Conn.; Jennifer Harvey M.D., University of Virginia Hospital, Charlottesville, Va.; Arnold Blaustein, M.D., Mt. Sinai Hospital, Miami,

15 No. 7 VST 238  Page 3
15 NO. 7 Verdicts, Settlements & Tactics 238
(Publication page references are not available for this document.)

```
Fla.
Plaintiff's Attorney:  Elizabeth Hawthorne Faiella of Elizabeth Hawthorne Faiella,
P.A., Winter Park, Fla.
Defendant's Attorney:  Robert Henry of Maguire, Voorhis and Wells, P.A., Orlando,
Fla.; Francis Pierce, III of Gurney and Handley, P.A., Orlando, Fla.
Ruffin v. Medical Center Radiology Group; No. CI94-4814 (Orange Cty. Jud. Cir. Ct.
Fla. March 30, 1995)
```

15 NO. 7 Verdicts, Settlements & Tactics 238

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

12 No. 8 VST 280 Page 2
12 NO. 8 Verdicts, Settlements & Tactics 280
(Publication page references are not available for this document.)

Verdicts, Settlements & Tactics
August 1992

Medical Liability

$1.4 MILLION ARBITRATION AWARD FOR FAILURE TO DIAGNOSE BREAST CANCER

Copyright © 1992 by Shepard's/McGraw-Hill, Inc.

On June 13, 1988, a 45-year-old sales manager at a retail clothing store went to her HMO health facility and complained about a breast lump. Although she had fibrocystic breast tissue, a physician's assistant, who examined her, verified the existence of a distinct lump. The patient was sent for a mammogram, which failed to reveal evidence of malignancy. No further evaluation of the lump was performed. One and one half years later, after the lump grew, a biopsy revealed malignant breast cancer, which became metastatic.

Suit was brought against the HMO (CareFirst) and against an internist who practiced at the HMO. Plaintiff contended that defendants failed to evaluate the breast lump properly.

Defendants contended that the lump was no different than other fibrocystic tissue; that plaintiff was contributorily negligent; and that plaintiff's cancer was not caused by the tumor about which plaintiff initially complained.
Injury: Metastatic breast cancer.
Result: $1,440,876 arbitration award in favor of plaintiff. The award consisted of $750,000 for pain and suffering; $500,000 for loss of consortium; $150,000 for future medical expenses; and $40,876 for past medical expenses.
Settlement Negotiations: Demand: $1.8 million. Offer: $450,000.
Plaintiff's Expert Witnesses: Frank Gump, M.D., breast surgeon, New York, N.Y.; William Nelson, M.D., oncologist, Baltimore, Md.
Defendants' Expert Witnesses: Clayton Louis Moravec, Jr., M.D., internist, Baltimore, Md.; Jonathan D. Lowenthal, M.D., internist, Prince Frederick, Md.
Plaintiff's Attorneys: Gary I. Strausberg and Susan M. Fila of Janet & Strausberg, Baltimore, Md.
Defendant's Attorneys: David H. Bamberger, Baltimore, Md. (for the internist); Price O. Gielen, Baltimore, Md. (for the HMO).
Greeley v. Slepian, No. 90-0395 (Health Claims Arbitration Office, Baltimore, Md. March 11, 1992)

12 NO. 8 Verdicts, Settlements & Tactics 280

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works