RECEIVED

2005 JUL -1 ₱ 3: 56

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **BARBARA D. GRAHAM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **WYETH d/b/a WYETH, INC. ;** | ) |
| **et al.** | ) |
| **Defendants.** | ) |

<u>**JURY DEMANDED**</u>

**CIVIL ACTION NO.** 2:05CV624-A

**<u>ANSWER AND AFFIRMATIVE DEFENSES
OF DEFENDANTS WYETH, WYETH-AYERST INTERNATIONAL, INC. AND
WYETH PHARMACEUTICALS INC.</u>**

Defendants Wyeth (registered to do business in Alabama as Wyeth, Inc.)[1], and Wyeth

Pharmaceuticals Inc. (improperly named in the Complaint as Wyeth Pharmaceuticals, Inc.)

(hereinafter collectively referred to as "Wyeth") answer the Complaint of Plaintiff Barbara D.

Graham as follows:

Wyeth denies each allegation in the Complaint ("Complaint") except those expressly

admitted below. Wyeth also states that, to the extent that allegations in the Complaint refer

generally to "defendants" or to "hormone therapy drugs," Wyeth answers the allegations as to

itself and as to its own hormone therapy drugs. To the extent that allegations in the Complaint

refer to defendants other than Wyeth, Wyeth states that it lacks knowledge sufficient to form a

belief as to the truth of the allegations and, therefore, denies the allegations.

---

1 When Wyeth refers to the individual entity "Wyeth" as opposed to the collective entity, it will
place an asterisk behind Wyeth: Wyeth*.

## Statement of Facts

1.      Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 1 and therefore denies the allegations.  Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 1 of the Complaint and, therefore, denies the allegations.  Wyeth denies the allegations in the third sentence of paragraph 1 of the Complaint.  Wyeth admits that plaintiff seeks relief as requested in paragraph 1 of the Complaint, but denies that she is entitled to this relief, or any relief whatsoever.

2.      Wyeth admits that Wyeth* is a Delaware corporation with its principal place of business in New Jersey.  Wyeth further admits that Wyeth*, through divisions and subsidiaries, was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and selling of Prempro and Premarin.  Wyeth denies the remaining allegations in paragraph 2 of the Complaint.

3.      Wyeth admits that Wyeth Pharmaceuticals Inc. is an indirect subsidiary of Wyeth*, incorporated in Delaware, with its principal place of business in Pennsylvania.  Wyeth further admits that Wyeth*, through divisions and subsidiaries, was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and selling of Prempro and Premarin.  Wyeth denies the remaining allegations in paragraph 3 of the Complaint.

4.      The allegations stated in paragraph 4 require no response.

5.      Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5 and, therefore, denies the allegations.

6.      The allegations stated in paragraph 6 require no response.

7.      Wyeth admits that Charles Payne is an Alabama resident and was an employee of Wyeth from 1978 to 2001. Wyeth denies the remaining allegations in paragraph 7 of the Complaint.

8.      Wyeth admits that Bill Richards is an Alabama resident and was an employee of Wyeth from 1996 to 2003. Wyeth denies the remaining allegations in paragraph 8 of the Complaint.

9.      The allegations stated in paragraph 9 require no response.

10.     Wyeth admits that Walter Williams, III, Bill Blount and Jennifer Andrews are Alabama residents. Wyeth further admits that Walter Williams, III has been employed by Wyeth since 2001; that Bill Blount has been employed by Wyeth since 2001. Wyeth denies the remaining allegations in paragraph 10 of the Complaint.

11.     The allegations stated in paragraph 11 require no response. Should a response be required, Wyeth denies the allegations therein.

12.     The allegations stated in paragraph 12 require no response. Should a response be required, Wyeth denies the allegations therein.

13.     Wyeth admits that Walter Williams, III and Bill Blount detailed Premarin and Prempro to Dr. Stuart May and provided him with sample medication. Wyeth denies the remaining allegations in paragraph 13 of the Complaint.

14.     The allegations in paragraph 14 of the Complaint state legal conclusions that require no response. Should a response be required, Wyeth denies the allegations therein.

15.     Wyeth admits that hormone therapy drugs are commonly prescribed to patients to aid in the treatment of menopause symptoms. Wyeth further admits that Wyeth*, through

divisions and subsidiaries, manufactured designed, marketed, sold and distributed Prempro and Premarin. Wyeth denies the remaining allegations in paragraph 15 of the Complaint.

16.    Wyeth denies the allegations in paragraph 16 of the Complaint.

17.    Wyeth admits that it provided samples of Prempro and Premarin to physicians. Wyeth denies the remaining allegations in paragraph 17 of the Complaint.

18.    Wyeth denies the allegations in paragraph 18 of the Complaint.

19.    Wyeth denies the allegations in paragraph 19 of the Complaint.

20.    Wyeth admits that estrogen levels generally decline in women experiencing menopause. Wyeth states that each woman's menopause is an individual experience that is not susceptible to the broad generalizations set forth in paragraph 20 regarding symptoms and consequences of menopause, to which extent those allegations are denied. Wyeth denies the remaining allegations in paragraph 20 of the Complaint.

21.    Wyeth admits that the FDA approved Premarin in 1942; that Premarin consists of conjugated estrogens; and that Premarin is derived from pregnant mare's urine. Wyeth denies the remaining allegations in paragraph 21 of the Complaint.

22.    Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations regarding the quoted material in paragraph 22 and, therefore, denies the allegations. Wyeth denies the remaining allegations in paragraph 22 of the Complaint.

23.    Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations regarding the quoted material in paragraph 23 and, therefore, denies the allegations. Wyeth denies the remaining allegations in paragraph 23 of the Complaint.

24.    Wyeth admits that it employs sales representatives to call on physicians; sponsors continuing medical education programs; hires experts; issues press releases; engages in direct-to-

consumer marketing; and places advertisements in medical journals. Wyeth denies the remaining allegations in paragraph 24 of the Complaint.

25.    Wyeth denies the allegations in paragraph 25 of the Complaint.

26.    Wyeth denies the allegations in paragraph 26 of the Complaint.

27.    Wyeth lacks knowledge to form a belief as to the truth of the allegations in paragraph 27 of the Complaint, and, therefore, denies the allegations.

28.    Wyeth admits that Dr. Wilson is the author of the book *Feminine Forever* and that plaintiffs purport to quote from the text of that book. Wyeth denies the remaining allegations in paragraph 28 of the Complaint.

29.    Wyeth denies the allegations in paragraph 29 of the Complaint.

30.    Wyeth admits that Ayerst, a former subsidiary of Wyeth, made contributions to the Wilson Research Foundation from 1966 through 1972. Wyeth denies the remaining allegations in paragraph 30 of the Complaint.

31.    Wyeth denies the allegations in paragraph 31 of the Complaint.

32.    Wyeth denies the allegations in paragraph 32 of the Complaint.

33.    Wyeth states that the FDA statement speaks for itself and any attempt to characterize it is expressly denied. Wyeth denies the remaining allegations in paragraph 33 of the Complaint.

34.    Wyeth admits that many women took estrogen in the 1970s, and denies the remaining allegations in paragraph 34 of the Complaint.

35.    Wyeth states that the research and studies referenced in paragraph 35 speak for themselves and any attempt to characterize them is expressly denied. Wyeth further states that the FDA-approved prescribing information for Premarin in 1979 speaks for itself and that any

attempt to characterize it is expressly denied. Wyeth denies the remaining allegations in paragraph 35 of the Complaint.

36.    Wyeth states that the research and study referenced in paragraph 36 speak for themselves and any attempt to characterize them is expressly denied. Wyeth admits that the combination of estrogen and progestin decreases the risk of endometrial cancer; and that the use of estrogen and progesterone is commonly referred to as combination hormone therapy. Wyeth denies the remaining allegations in paragraph 36 of the Complaint.

37.    Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 37 and, therefore, denies the allegations.

38.    Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 38 regarding non-Wyeth entities and, therefore, denies the allegations. Wyeth denies the remaining allegations in paragraph 38 of the Complaint.

39.    Wyeth denies the allegations in paragraph 39 of the Complaint.

40.    Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 40 regarding the public relations firm, and, therefore, denies the allegations. Wyeth denies the remaining allegations in paragraph 40 of the Complaint.

41.    Wyeth admits that it has made contributions to the National Osteoporosis Foundation. Wyeth denies the remaining allegations in paragraph 41 of the Complaint.

42.    Wyeth denies the allegations in paragraph 42 of the Complaint.

43.    Wyeth denies the allegations in paragraph 43 of the Complaint.

44.    Wyeth denies the allegations in paragraph 44 of the Complaint.

45.    Wyeth denies the allegations in paragraph 45 of the Complaint.

46.    Wyeth denies the allegations in paragraph 46 of the Complaint.

47.    Wyeth admits that Prempro and Premphase are combinations of estrogen and progestin. Wyeth states that the regimens for both Prempro therapy and Premphase therapy are set forth in the FDA-approved product labeling and any attempt to characterize those regimens is denied. Wyeth denies the remaining allegations in paragraph 47 of the Complaint.

48.    Wyeth states that the unnamed research and studies referenced in paragraph 48 speak for themselves and any attempt to characterize them is expressly denied. Wyeth denies the remaining allegations in paragraph 48 of the Complaint.

49.    Wyeth admits that it funded the HERS study; that HERS was an effort to test the widely held belief, based on the existing scientific data, that hormone therapy confers a cardiac benefit in postmenopausal women; and that HERS investigators reported that hormone therapy did not prevent further heart attacks or death from coronary heart disease in postmenopausal women with heart disease. Wyeth denies the remaining allegations in paragraph 49 of the Complaint.

50.    Wyeth admits that it distributed the brochure that plaintiffs purport to quote in the second and third sentences of paragraph 50. Wyeth denies the remaining allegations in paragraph 50 of the Complaint.

51.    Wyeth admits that plaintiffs accurately quote the printed material, but denies any implication that Wyeth was in any way involved in the publication of this material. Wyeth denies the remaining allegations in paragraph 51 of the Complaint.

52.    Wyeth denies the allegations in paragraph 52 of the Complaint.

53.    Wyeth admits that plaintiffs purport to set forth the partial text of an article published in the July 17, 2002 edition of *The Journal of the American Medical Association (JAMA)*, but denies that the quoted material fully, fairly, or accurately describes the full

substance of the article. Wyeth denies the remaining allegations in paragraph 53 of the Complaint.

54.     Wyeth admits that it petitioned the FDA to add an indication in the Premarin label relating to cardiac health; that the FDA did not approve the request; and that, instead, the FDA added information to the Precautions section of the Premarin label that existing scientific data indicated a cardiac benefit. Wyeth denies the remaining allegations in paragraph 54 of the Complaint.

55.     Wyeth admits that the WHI study was conducted by the NIH and denies the remaining allegations in paragraph 55 of the Complaint.

56.     Wyeth admits that plaintiffs accurately quote the brochure referenced in paragraph 56, but denies that the quoted portions fully and fairly represent the substance of the brochure. Wyeth denies the remaining allegations in paragraph 56 of the Complaint.

57.     Wyeth admits that, on July 9, 2002, the NHLBI announced it was stopping a clinical trial of Prempro. Wyeth states that the findings of the referenced study speak for themselves and any attempt to characterize them is expressly denied. Wyeth denies the remaining allegations in paragraph 57 of the Complaint.

58.     Wyeth denies the allegations in paragraph 58 of the Complaint.

59.     Wyeth admits that the WHI describes itself on its website as a study that focuses on strategies for preventing heart disease, breast and colorectal cancer and osteoporosis in postmenopausal women; that the WHI study purports to have begun in 1993 and to involve over 161,000 women aged 50-79 who participate in either clinical trials or observational studies conducted at 40 centers throughout the United States; that the estrogen plus progestin arm of the WHI clinical study purportedly involved 16,608 women ages 50 to 79 with an intact uterus and

who were given progestin in combination with estrogen; and that an objective of the estrogen plus progestin study purportedly was to examine the effects of estrogen and progestin on the prevention of heart disease and hip fractures and any association with risks of breast and colon cancer. Wyeth denies the remaining allegations in paragraph 59 of the Complaint.

60.     Wyeth admits that the DSMB purports to have made recommendations based on data developed from the WHI trial of combined estrogen and progestin and to have communicated those recommendations to the participants of the trial. Wyeth has requested, but has not yet had the opportunity to review fully, the study's underlying data. Accordingly, Wyeth lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 60 of the Complaint and, therefore, denies the same.

61.     Wyeth admits that, in the spring of 2002, the DSMB purportedly found that adverse events for breast cancer crossed the WHI study boundary established as a signal for increased risk; that the DSMB made conclusions based on data developed from the WHI trial and recommended that the WHI study of combined estrogen and progestin be stopped; and that the NIH purportedly sent letters to participants informing them about the study results and telling them that they should stop use of the study medications. Wyeth denies the remaining allegations in paragraph 61 of the Complaint.

62.     Wyeth admits that a July 17, 2002 article published in *The Journal of the American Medical Association (JAMA)* regarding the study reports differences in the relative risk between the study group and the placebo group. Wyeth denies the remaining allegations in paragraph 62 of the Complaint.

63.     Wyeth states that the findings of the estrogen plus progestin arm of the WHI study speak for themselves, and any attempt to characterize them is expressly denied. Wyeth denies the remaining allegations in paragraph 63 of the Complaint.

64.     Wyeth admits that, on July 9, 2002, *The Journal of the American Medical Association* (*JAMA*) released a publication of the July 17, 2002 article entitled, *Risks and Benefits of Estrogen Plus Progestin in Healthy Postmenopausal Women: Principal Results from the Women's Health Initiative Randomized Controlled Trial*, Vol. 288, No. 3, July 17, 2002. Wyeth lacks knowledge sufficient to form a belief as to the truth of the allegation that it was an expedited publication and, therefore, denies the same. Wyeth admits that the quoted comments of Dr. Claude Lenfant were publicly reported in the media, but denies that this excerpt fully, fairly, or accurately represents the substance of Dr. Lenfant's full reported remarks and other statements. Wyeth denies the remaining allegations in paragraph 64 of the Complaint.

65.     Wyeth admits that the quoted comments of Dr. Jacques Roussow were publicly reported in the media, but denies that this excerpt fully, fairly, or accurately represents the substance of Dr. Roussow's full reported remarks and other statements. Wyeth denies the remaining allegations in paragraph 65 of the Complaint.

66.     Wyeth denies the allegations in paragraph 66 of the Complaint.

**Blood Clot Risks**

67.     Wyeth denies the allegations in paragraph 67 of the Complaint.

**Breast Cancer Risks**

68.     Wyeth further states that the article referenced in paragraph 68 speaks for itself and that any attempt to characterize its findings is expressly denied. Wyeth denies the remaining allegations in paragraph 68 of the Complaint.

69.     Wyeth admits that, on June 25, 2003, *The Journal of the American Medical Association (JAMA)* published an article entitled, *Influence of Estrogen Plus Progestin on Breast Cancer and Mammography in Healthy Postmenopausal Women: The Women's Health Initiative Randomized Trial*, and an editorial by Peter H. Gann. Wyeth states that both the article's findings and the editorial speak for themselves and that any attempt to characterize them is expressly denied. Wyeth denies the remaining allegations in paragraph 69 of the Complaint.

70.     Wyeth denies the allegations in paragraph 70 of the Complaint.

**Ovarian Cancer Risks**

71.     Wyeth admits that, on July 17, 2002, *The Journal of the American Medical Association* (*JAMA*) published an article entitled *Menopausal Hormone Replacement Therapy and Risk of Ovarian Cancer*, Vol. 288, No. 3, July 17, 2002. Wyeth states that the article speaks for itself and that any attempt to characterize its findings is expressly denied. Wyeth admits that the quoted comments of Dr. James Lacey were publicly reported in the media, but denies that this excerpt fully, fairly or accurately represents the substance of Dr. Lacey's full reported remarks and other statements. Wyeth denies the remaining allegations in paragraph 71 of the Complaint.

72.     Wyeth states that the findings of the study referenced in paragraph 72 speak for themselves and that any attempt to characterize them is expressly denied. Wyeth denies the remaining allegations in paragraph 72 of the Complaint.

73.     Wyeth admits that, on October 1, 2003, *The Journal of the American Medical Association* (*JAMA*) published an article entitled, *Effects of Estrogen Plus Progestin on Gynecologic Cancers and Associated Diagnostic Procedures*, Vol. 290, No. 13, October 1, 2003.

Wyeth states that this article speaks for itself and that any attempt to characterize its finding is expressly denied. Wyeth denies the remaining allegations in paragraph 73 of the Complaint.

74.    Wyeth denies the allegations in paragraph 74 of the Complaint.

**Gallbladder Cancer Risks**

75.    Wyeth denies the allegations in paragraph 75 of the Complaint.

**Asthma Risks**

76.    Wyeth denies the allegations in paragraph 76 of the Complaint.

**General Cancer Risk**

77.    Wyeth states that the report on carcinogens referenced in paragraph 77 speaks for itself and that any attempt to characterize it is expressly denied. Wyeth denies the remaining allegations in paragraph 77 of the Complaint.

**No Real Benefit**

78.    Wyeth denies the allegations in paragraph 78 of the Complaint.

**No Cardiac Benefit**

79.    Wyeth admits that, on August 7, 2003, *The New England Journal of Medicine* published an article entitled, *From Presumed Benefit to Potential Harm – Hormone Therapy and Heart Disease*. Wyeth states that this article speaks for itself and that any attempt to characterize its findings is expressly denied. Wyeth denies the remaining allegations in paragraph 79 of the Complaint.

**No Unique Osteoporosis Benefits**

80.    Wyeth admits that, on May 21, 2003, *The Journal of the American Medical Association (JAMA)* published an article entitled, *Combination Therapy With Hormone Replacement and Alendronate for Prevention of Bone Loss in Elderly Women: A Randomized*

*Controlled Trial*, Vol. 289, No. 19. Wyeth states that the findings of this article speak for themselves and that any attempt to characterize them is expressly denied. Wyeth denies the remaining allegations in paragraph 80 of the Complaint.

**No Mental Functioning Benefits**

81.    Wyeth admits that on May 28, 2003, *The Journal of the American Medical Association (JAMA)* published an article entitled, *Estrogen Plus Progestin and the Incidence of Dementia and Mild Cognitive Impairment in Postmenopausal Women*, Vol. 289, No. 20. Wyeth states that the findings of this article speak for themselves and that any attempt to characterize them is expressly denied. Wyeth further admits that the quoted comments of Dr. Sally Shumaker were publicly reported in the media, but denies that these comments fully, fairly, or accurately represent the substance of Dr. Shumaker's full reported remarks and other statements. Wyeth denies the remaining allegations in paragraph 81 of the Complaint.

**No Substantial Quality of Life Benefits**

82.    Wyeth admits that, on March 17, 2003, the website of *The New England Journal of Medicine* published an article entitled, *Effects of Estrogen Plus Progestin on Health-Related Quality of Life*. Wyeth states that this article speaks for itself and that any attempt to characterize its findings is expressly denied. Wyeth admits that the quoted comments of Dr. Jennifer Hays were publicly reported in the media, but denies that the excerpt fully, fairly, or accurately represents the substance of Dr. Hays' full reported remarks and other statements. Wyeth denies the remaining allegations in paragraph 82 of the Complaint.

83.    Wyeth denies the allegations in paragraph 83 of the Complaint.

**Inadequate Warnings**

84.    Wyeth denies the allegations in paragraph 84 of the Complaint.

85.    Wyeth denies the allegations in paragraph 85 of the Complaint.

86.    Wyeth denies the allegations in paragraph 86 of the Complaint.

87.    Wyeth denies the allegations in paragraph 87 of the Complaint.

88.    Wyeth denies the allegations in paragraph 88 of the Complaint.

89.    Wyeth admits that the referenced message from Wyeth was published as indicated; states that the message speaks for itself and that any attempt to characterize it is expressly denied; and denies the remaining allegations in paragraph 89 of the Complaint.

90.    Wyeth denies the allegations in paragraph 90 of the Complaint.

91.    Wyeth denies the allegations in paragraph 91 of the Complaint.

92.    Wyeth denies the allegations in paragraph 92 of the Complaint.

93.    Wyeth denies the allegations in paragraph 93 of the Complaint.

94.    Wyeth denies the allegations in paragraph 94 of the Complaint.

95.    Wyeth denies the allegations in paragraph 95 of the Complaint.

## COUNT I

96.    Wyeth incorporates and realleges the answers to the preceding paragraphs as if fully set forth herein.

97.    Wyeth denies the allegations in paragraph 97 of the Complaint.

98.    Wyeth denies the allegations in paragraph 98 of the Complaint.

99.    Wyeth denies the allegations in paragraph 99 of the Complaint.

100.    Wyeth denies the allegations in paragraph 100 of the Complaint.

101.    Wyeth denies the allegations in paragraph 101 of the Complaint.

Wyeth denies that plaintiff is entitled to any relief whatsoever.

## COUNT II

102.     Wyeth incorporates and realleges the answers to the preceding paragraphs as if fully set forth herein.

103.     The allegations in paragraph 103 state legal conclusions that require no response. Should a response be required, Wyeth denies the allegations therein.

104.     Wyeth denies the allegations in paragraph 104 of the Complaint.

105.     Wyeth denies the allegations in paragraph 105 of the Complaint.

106.     Wyeth denies the allegations in paragraph 106 of the Complaint.

107.     Wyeth denies the allegations in paragraph 107 of the Complaint.

Wyeth denies that plaintiff is entitled to any relief whatsoever.

## COUNT III

108.     Wyeth incorporates and realleges the answers to the preceding paragraphs as if fully set forth herein.

109.     Wyeth denies the allegations in paragraph 109 of the Complaint.

110.     Wyeth denies the allegations in paragraph 110 of the Complaint.

111.     Wyeth denies the allegations in paragraph 111 of the Complaint.

Wyeth denies that plaintiff is entitled to any relief whatsoever.

## COUNT IV

112.     Wyeth incorporates and realleges the answers to the preceding paragraphs as if fully set forth herein.

113.     Wyeth denies the allegations in paragraph 113 of the Complaint.

114.     Wyeth denies the allegations in paragraph 114 of the Complaint.

115.     Wyeth denies the allegations in paragraph 115 of the Complaint.

116.    Wyeth denies the allegations in paragraph 116 of the Complaint.

Wyeth denies that plaintiff is entitled to any relief whatsoever.

## COUNT V

117.    Wyeth incorporates and realleges the answers to the preceding paragraphs as if fully set forth herein.

118.    Wyeth denies the allegations in paragraph 118 of the Complaint.

119.    Wyeth denies the allegations in paragraph 119 of the Complaint.

120.    Wyeth denies the allegations in paragraph 120 of the Complaint.

Wyeth denies that plaintiff is entitled to any relief whatsoever.

## COUNT VI

121.    Wyeth incorporates and realleges the answers to the preceding paragraphs as if fully set forth herein.

122.    Wyeth denies the allegations in paragraph 122 of the Complaint.

123.    Wyeth denies the allegations in paragraph 123 of the Complaint.

124.    Wyeth denies the allegations in paragraph 124 of the Complaint.

Wyeth denies that plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

As for additional defenses to the Complaint, and without assuming any burden of pleading or proof that would otherwise rest on plaintiff, Wyeth alleges as follows:

### First Affirmative Defense

The Complaint fails to state, in whole or in part, a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

### Third Affirmative Defense

Plaintiff knowingly and voluntarily assumed any and all risks associated with the matters alleged in the Amended Complaint. Pursuant to the doctrines of assumption of the risk or informed consent, this conduct bars in whole or in part the damages that plaintiff seeks to recover herein.

### Fourth Affirmative Defense

Plaintiff's claims are barred because the injuries allegedly sustained by plaintiffs were not proximately caused by any act or omission of Wyeth.

### Fifth Affirmative Defense

Plaintiff's claims are barred due to her contributory negligence.

### Sixth Affirmative Defense

If plaintiff was injured by any product manufactured, sold, or distributed by Wyeth, those injuries occurred because the product was used for a purpose other than that for which it was intended, in a manner other than that in which it was intended to be used, and in disregard of instructions and directions regarding its use. Such misuse was not reasonably foreseeable to Wyeth.

### Seventh Affirmative Defense

Plaintiff's alleged injuries and damages, if any, were caused in whole or in part by the acts and omissions of third parties over whom Wyeth had no authority or control, including without limitation, misuse of Premarin, Prempro, Premphase, Aygestin and Cycrin (the "subject

products") by such third parties.

## Eighth Affirmative Defense

Plaintiff's claims are barred because any injuries and damages allegedly sustained by plaintiff was the result of pre-existing or subsequent conditions that are unrelated to use of the subject products.

## Ninth Affirmative Defense

Plaintiff's claims are barred because any injuries and damages allegedly sustained by plaintiff as a result of the subject products was caused by an idiosyncratic reaction to the drugs that was not reasonably foreseeable to Wyeth.

## Tenth Affirmative Defense

Plaintiff's claims are barred by reason of plaintiff's failure to mitigate the alleged damages or losses.

## Eleventh Affirmative Defense

Plaintiff's claims are barred by the equitable doctrines of laches, waiver, and estoppel.

## Twelfth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of merger, bar, collateral estoppel, res judicata, release, discharge, and accord and satisfaction.

## Thirteenth Affirmative Defense

Wyeth denies, to the extent the actions alleged may have occurred, that any entity engaging in the activities alleged was acting as the agent or servant of Wyeth, or at the instruction or subject to the control of Wyeth with regard to any of the actions described in the Complaint; thus, Wyeth is not liable for any acts or omissions of such third parties as a matter of law.

### Fourteenth Affirmative Defense

Wyeth avers that it did not participate in, authorize, ratify, or benefit from the alleged misrepresentations or wrongful acts that are asserted in the Amended Complaint.

### Fifteenth Affirmative Defense

Wyeth affirmatively pleads the application of comment k of section 402A of the Restatement (Second) of Torts and section 6(c) of the Restatement (Third) of Torts: Product Liability and its limitations upon the doctrine of strict product liability for purported design defect.

### Sixteenth Affirmative Defense

Wyeth provided adequate and complete warnings concerning the subject products to plaintiff's prescribing physicians. Therefore, any claims by plaintiff for inadequate warnings are controlled by, and barred under, the learned intermediary doctrine.

### Seventeenth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the lack of a defect since the subject products were properly prepared in accordance with the applicable standard of care.

### Eighteenth Affirmative Defense

Plaintiff's claims are barred because, based on the state of scientific, medical and technical knowledge at the time the subject products were marketed, the products were reasonably safe for their normal and foreseeable use at all times, they were not unreasonably dangerous or defective, and their benefits exceeded any associated risks.

### Nineteenth Affirmative Defense

Plaintiff's claims are barred because the methods, standards, and techniques utilized by Wyeth in manufacturing, distributing, marketing, or labeling the subject products and in issuing

warnings and instructions with respect to their use, conformed with the generally recognized, reasonably available, and reliable state of knowledge at the time the products was manufactured and distributed.

### Twentieth Affirmative Defense

Plaintiff's claims predicated on state tort law and alleging that the subject products are unsafe are barred, in whole or in part, by the doctrine of federal preemption and the Supremacy Clause of the United States Constitution, Article IV, clause 2.

### Twenty-First Affirmative Defense

The conduct of Wyeth, as well as the subject products, conformed with the Federal Food, Drug, and Cosmetic Act and the requirements of the Food and Drug Administration.  Moreover, the activities of Wyeth alleged in the Complaint conformed with all state and federal statutes, regulations, and industry standards based upon the state of knowledge existing at the relevant time alleged in the Complaint.

### Twenty-Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, because Wyeth's advertisements and labeling with respect to the subject products were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

### Twenty-Third Affirmative Defense

To the extent plaintiff's claims are based on a theory providing for liability without proof of causation, the claims violate Wyeth's rights under the United States Constitution.

### Twenty-Fourth Affirmative Defense

Should Wyeth be held liable to plaintiff, which liability is specifically denied, Wyeth

would be entitled to a set off for the total of all amounts paid to plaintiffs from all collateral sources.

### Twenty-Fifth Affirmative Defense

Notwithstanding the claims and contentions of plaintiff, plaintiff received all or substantially all of the benefit from the subject products that plaintiff hoped and intended to receive, and, to that extent, any damages and/or restitution that plaintiff might be entitled to recover from Wyeth must be correspondingly reduced.

### Twenty-Sixth Affirmative Defense

To the extent applicable, plaintiff's breach of warranty claims are barred by a lack of privity between plaintiff and Wyeth and because plaintiff failed to provide Wyeth with reasonable or adequate notice of the alleged breach of any such purported warranties.

### Twenty-Seventh Affirmative Defense

If the plaintiff sustained the injuries or incurred the expenses alleged, they may have been caused, in whole or in part, by operation of nature or by act of God.

### Twenty-Eighth Affirmative Defense

The manufacture, marketing, and labeling of the subject products was and is controlled by federal law, and Wyeth was at all times in compliance and obedience with applicable federal law.

### Twenty-Ninth Affirmative Defense

An award of mental anguish or emotional distress damages in this case will violate Wyeth's Due Process and Equal Protection rights guaranteed by the Alabama Constitution and the United States Constitution because Alabama juries are not given any rules, standards, or guidelines upon which to rely in calculating mental anguish or emotional distress damage

awards.

### Thirtieth Affirmative Defense

Because of the lack of clear standards, the imposition of punitive damages against Wyeth is unconstitutionally vague and/or overbroad.

### Thirty-First Affirmative Defense

No act or omission of Wyeth was malicious, willful, wanton, reckless, grossly negligent or intentional and, therefore, any award of punitive damages is barred.

### Thirty-Second Affirmative Defense

Plaintiff's claims for punitive damages are in contravention of Wyeth's rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution; the Excessive Fines Clause of the Eighth Amendment of the United States Constitution; the Double Jeopardy Clause in the Fifth Amendment to the Constitution of the United States; similar provisions in the Constitution of Alabama and/or the common law and public policies of Alabama; and/or applicable statutes and court rules, in the circumstances of this litigation, including, but not limited to:

    (a)    imposition of punitive damages by a jury which

        (1) is not provided with standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award;

        (2) is not adequately and clearly instructed on the limits on punitive damages imposed by the principles of deterrence and punishment;

        (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award thereof, in whole or in part, on the basis of invidiously discriminatory characteristics, including the corporate status, wealth, or state of residence of Wyeth;

        (4) is permitted to award punitive damages under a standard for determining liability for such damages which is vague and arbitrary and does not define with

sufficient clarity the conduct or mental state which makes punitive damages permissible; and

(5) is not subject to trial court and appellate judicial review for reasonableness and the furtherance of legitimate purposes on the basis of objective standards;

(b)     imposition of such punitive damages, and determination of the amount of an award thereof, where applicable state law is impermissibly vague, imprecise, or inconsistent;

(c)     imposition of such punitive damages, and determination of the amount of an award thereof, without bifurcating the trial and trying all punitive damages issues only if and after the liability of defendants has been found on the merits;

(d)     imposition of such punitive damages, and determination of the amount of an award thereof, based on anything other than Wyeth's conduct in connection with the sale of the product alleged in this litigation, or in any other way subjecting Wyeth to impermissible multiple punishment for the same alleged wrong.

### Thirty-Third Affirmative Defense

Plaintiff has failed to plead fraud with the requisite degree of specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.

### Thirty-Fourth Affirmative Defense

To award plaintiff damages for alleged mental anguish or emotional distress in the absence of any standards for the determination of mental anguish or emotional distress and/or the absence of any requirement for corroborating or objective evidence of mental anguish or emotional distress makes such an award tantamount to punitive damages. As such, Wyeth avers that such an award in this case would violate the safeguards provided to Wyeth under both the Alabama Constitution and the United States Constitution.

### Thirty-Fifth Affirmative Defense

Wyeth pleads the general issue.

### Thirty-Sixth Affirmative Defense

No punitive damages are warranted or allowable that would exceed comparable maximums established for criminal fines.

### Thirty-Seventh Affirmative Defense

Any award of punitive damages is barred by Ala. Code § 6-11-20 (1993) *et seq.,* and by Ala. Code § 6-1 1-27 (1993).

### Thirty-Eighth Affirmative Defense

Any claim for punitive damages, on its face and/or as applied in this case, is in violation of Article 1, Sections 1, 2, 6, 11, 13, *15,* 27, and 35 of the Constitution of Alabama of 1901, and is improper under the common law and public policies of the State of Alabama and under applicable court rules and statutes for the following reasons, jointly and separately:

(a) There are no standards provided by Alabama law for the imposition of punitive damages, and therefore, Wyeth has not been put on notice and given the opportunity to anticipate punitive liability and/or the potential size of the award and to modify or conform its conduct accordingly;

(b) The procedures to be followed would permit an award of punitive damages against Wyeth upon the satisfaction of *a* burden of persuasion (standard of proof) less than that applicable to the imposition of criminal sanctions for equal culpability;

(c) The procedures to be followed could permit the award of multiple punitive damages for the same act or omission;

(d) There are no provisions or standards for clear and consistent appellate review of any award of punitive damages against Wyeth under present Alabama law;

(e) The standards of conduct upon which punitive damages are sought against Wyeth are vague and ambiguous;

(f) The procedures used by courts under Alabama law and the guidelines given by the jurors, jointly and severally, are vague and ambiguous;

(g)     The procedures used by courts under Alabama law and guidelines given to jurors, jointly and separately, are vague and ambiguous and, thus, impermissibly allow jurors broad, unlimited, and undefined power to make determinations on their notions of what the law should be instead of what it is;

(h)     The procedures under which punitive damages are awarded and the instructions used under Alabama law, jointly and separately, are vague and ambiguous and, thus, fail to eliminate the effects of, and to guard against, impermissible juror passion;

(i)     Present Alabama law does not provide for sufficiently objective and specific standards to be used by the jury in its deliberations on whether to award punitive damages and, if so, on the amount to be awarded;

(j)     Present Alabama law does not provide a meaningful opportunity for challenging the rational basis for, and any excessiveness of, any award of punitive damages;

(k)     Present Alabama law does not provide for adequate and independent review by the trial court and the appellate court of the imposition of punitive damages by a jury or of the amount of any punitive damage awarded by a jury;

(l)     Present Alabama procedures fail to provide a constitutionally reasonable limit on the amount of any punitive damage award against Wyeth;

(m)     Present Alabama procedures may permit the admission of evidence relative to punitive damages in the same proceeding during which liability is determined;

(n)     Present Alabama procedures permit the imposition of joint and several judgments against multiple co-defendants for different acts of degrees of wrongdoing or culpability;

(o)     An award of punitive damages would compensate plaintiff for elements of damage not otherwise recognized by Alabama law.

Moreover, any award of punitive damages in the circumstances of this case would violate Wyeth's due process rights as embraced by the due process clause of Article 1, Section 6 and/or 13 and/or 22 of the Alabama Constitution, jointly and separately, as such award would constitute a deprivation of property without due process of law for the following reasons as separately stated herein:

(a) There is no rational relationship between the punitive damage awards in Alabama and the wrongfulness of a defendant's conduct and/or the compensatory damages awarded.

(b) No rational relationship exists between the extent of punitive damages and legitimate interests to be advanced by the State of Alabama.

(c) An award of punitive damages in this case would be penal in nature and thus, would be violative of Wyeth's constitutional rights under the United States Constitution and/or the Alabama Constitution unless Wyeth is granted the procedural safeguards afforded criminal defendants including but not limited to constitutional safeguards against self-incrimination and a heightened standard of proof beyond a reasonable doubt.

(d) The award of punitive damages on the basis of vicarious liability for the conduct of others violates Wyeth's constitutional rights.

In addition, any award of punitive damages in this case would violate Wyeth's rights under Article 1, Section 22 of the Alabama Constitution in that it would impair the contractual obligations of parties to this litigation.

**Thirty-Ninth Affirmative Defense**

With respect to any demand by plaintiffs for punitive damages, Wyeth specifically incorporates by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of No. America v. Gore,* 517 U.S. *559* (1996), and *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424 (2001).

**Fortieth Affirmative Defense**

To the extent that any demand by plaintiffs for punitive damages may result in multiple punitive damage awards being assessed for the same act or omission against Wyeth, this~ award contravenes Wyeth's right to due process under the Due Process Clause of Article 1, Section 13 of the Alabama Constitution. In addition, such awards would infringe upon Wyeth's rights against double jeopardy insured by the Fifth Amendment of the United States Constitution

and/or Article 1, Section 9 of the Alabama Constitution.

### Forty-First Affirmative Defense

The procedures pursuant to which punitive damages are awarded expose civil 7~7 defendants to the risk of indefinable, unlimited liability unrelated to actual loss, if any, caused by their conduct, creating a chilling effect on the defendants' exercise of the right to a judicial resolution of this dispute.

### Forty-Second Affirmative Defense

To the extent plaintiff has suffered no physical injury, § 6-1 1-21 of the Code of Alabama bars plaintiffs claim for punitive damages insofar as said claim exceeds the greater of three times plaintiffs compensatory damages or $500,000.00, which the Alabama Legislature has established as the outer limit of reasonableness for awards of punitive damages as a matter of public policy in this state. To the extent plaintiff does claim that plaintiff has suffered physical injury, § 6-11-21 of the Code of Alabama bars plaintiffs claim for punitive damages insofar as said claim exceeds the greater of three times plaintiffs' compensatory damages or $1,500,000.00, which the Alabama Legislature has established as the outer limit of reasonableness for awards of punitive damages as a matter of public policy in this state.

Wyeth requests that plaintiff be denied the relief sought in the Complaint and that Wyeth be dismissed from this action and awarded costs together with any additional relief that the Court deems just and proper.   Wyeth reserves the right to supplement its answer and affirmative defenses with additional defenses that become available or apparent during the course of investigation, preparation, or discovery and to amend its answer accordingly.

### DEMAND FOR JURY TRIAL

Wyeth demands a jury trial on all claims so triable in this action.

**WHEREFORE,** Wyeth prays for relief and judgment against plaintiff as follows:

A.  That plaintiff takes nothing by reason of the Complaint;

B.  That this action be dismissed with prejudice;

C.  That Wyeth recovers its fees, costs and attorneys' fees incurred herein; and

D.  Such further and other relief as the Court deems proper.

_David Martin_

Lee H. Copeland (COP004)
Mitchell H. Boles (BOL029)
J. David Martin (MAR120)
**One of the Attorneys for Defendants**
 **Wyeth (a/k/a Wyeth, Inc.) and**
**Wyeth Pharmaceuticals Inc.**

**OF COUNSEL:**

Lee H.Copeland
Mitchel H. Boles
J. David Martin
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, Alabama 36101-0347
Telephone:    (334) 834-1180
Facsimile:    (334) 834-3172

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of July, 2005, I have served a copy of the above and foregoing document upon the following counsel of record by First Class Mail, postage prepaid and properly addressed:

Andy D. Birchfield, Jr.
Ted G. Meadows
Melissa A. Prickett
Beasley, Allen, Crow, Methvin,
 Portis & Miles, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone: 334-269-2343
Facsimile: 334-954-7555
**Attorneys for Plaintiff -**

Qualitest Pharmaceuticals, Inc.
c/o William S. Propst, Sr.
130 Vintage Drive Northeast
Huntsville, Alabama 35011

Bill Blount
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

Williams Walter, III
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

Jennifer Andrews
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

Charles H. Payne
c/o Donald R. Jones, Jr.
2000 Interstate Park Drive
Montgomery, Alabama 36109

Bill Richards
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ 07940

_____

Of Counsel