IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **BARBARA D. GRAHAM,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CIVIL ACTION NO. 2:05-cv-624A |
| **WYETH d/b/a WYETH, INC. ;** et al. | ) ) ) |
| Defendants. | ) ) |

**DEFENDANT WYETH'S OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

This case is one of more than a thousand filed nationwide involving the prescription drugs Prempro, Premarin and/or Medroxyprogesterine Acetate ("MPA") and allegations that Wyeth[1] failed to warn adequately about the drugs' alleged risks. The Judicial Panel on Multidistrict Litigation has consolidated the federal cases as *In re Prempro Products Liability Litigation*, MDL-1507 (E.D. Ark.) (Judge William R. Wilson).[2]

In many of these cases, counsel for plaintiffs have sought to avoid federal jurisdiction by making allegations against non-diverse physicians, pharmacies, distributors or pharmaceutical sales representatives that are, at best, mere window-dressing. Other courts overseeing mass tort drug litigation have surveyed the overwhelming evidence of improper forum manipulation and found that such actions "can only be characterized as a sham, at the unfair expense not only of

---

[1] Wyeth Pharmaceuticals is a unincorporated division of Wyeth, registered to do business in Alabama as Wyeth, Inc. Because plaintiff alleges Wyeth Pharmaceuticals a/k/a Wyeth Pharmaceuticals, Inc. is a separate corporate entity, Defendants assume plaintiff intended to name Wyeth Pharmaceuticals Inc.

[2] The Judicial Panel on Multidistrict Litigation conditionally transferred this case to MDL-1507 on July 21, 2005. *See* Conditional Transfer Order No. CTO-50 (Attached as Exhibit A).

1

[Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) (diet drug litigation). The court in *Anderson* found that plaintiffs "are engaging in improper efforts to prevent [Wyeth] from exercising its statutory right . . . to remove cases based on diversity of citizenship to the federal courts… ." *Id.*

Just five weeks ago, the Prempro MDL judge denied a motion to remand filed by plaintiff's counsel in another Alabama case, finding that the attempts to add sales representative defendants after the case was removed "are bottomed upon the primary (if not sole) notion of defeating federal diversity jurisdiction," and that "[i]t appears that Plaintiff could not maintain a cause of action against these Defendants (Sales Representatives) under Alabama law." *In re Prempro Prod. Liab. Litig.*, MDL-1507 (E.D. Ark. June 27, 2005) (Exhibit B). The same is true in this case.

Plaintiff attempts to avoid federal jurisdiction by purporting to assert claims against the following Alabama-resident defendants: a Wyeth Sales Manager (Bill Richards), a non-Wyeth Sales Representative (Jennifer Andrews), three Wyeth Sales Representatives (Walter Williams, III, Charles H. Payne and William Blount) and a distributor (Qualitest Pharmaceuticals, Inc.). Wyeth removed this case on the basis that these defendants are fraudulently joined. In her Motion to Remand, plaintiff does not seriously contend that these defendants are liable for her alleged injuries or that she intends to pursue a claim against them to judgment. Rather, plaintiff simply contends that she has done the bare minimum under Alabama law to assert a claim against them. In fact, as set forth below, plaintiff falls short of even this minimum standard, as

2

there is no "reasonable basis" for her claims against these defendants. Therefore plaintiff's Motion to Remand should be denied.

## I.     PROCEDURAL HISTORY

Plaintiff originally filed this products liability action in the Circuit Court of Bullock County on June 3, 2005, alleging that she suffered personal injuries as a result of ingesting Premarin, Prempro, and MPA and from approximately 1996 to June 3, 2005. *See* Complaint, ¶ 1. Wyeth timely removed the case to federal court on July 9, 2003, arguing that the non-diverse defendants were fraudulently joined under Alabama law and that, as a result, they should be disregarded for purposes of determining federal jurisdiction. Plaintiff moved for remand on July 8, 2005.[3]

## II.    ARGUMENT

Plaintiff asserts six claims against "the Defendants," making no distinction among the defendants: a claim under the Alabama Extended Manufacturer Liability Doctrine ("AEMLD") (Count I); a claim for negligence/wantonness (Count II); a claim for breach of express warranty (Count III); a claim for breach of the implied warranty of merchantability (Count IV); a claim for fraudulent misrepresentation (Count V); and a claim for fraudulent suppression (Count VI). The underlying premise of all of plaintiff's claims are that defendants downplayed the risks and overstated the benefits of hormone replacement therapy, as demonstrated by the WHI study published in July 2002, and had they disclosed the true risks and benefits she would not have been injured because she would not have taken hormone replacement therapy. The flaw with this theory is that, as alleged in the Complaint, plaintiff continued to take hormone replacement therapy until "approximately June 9, 2003" -- nearly 11 months *after* the WHI study was

---

[3]   Plaintiff also filed a motion to expedite consideration of the motion to remand. Because the Court has already issued a briefing schedule, Wyeth assumes this motion is moot.

3

published, the results widely disseminated, and the Premarin and Prempro labels updated to include the results. Complaint at ¶ 1. Thus, plaintiff has no "reasonable basis" for any claims against <u>any</u> of the defendants. But, as set forth in detail below, there is no "reasonable basis" for her claims against the non-diverse defendants for numerous other reasons as well.

     A.     **The Fraudulent Joinder Standard**

The United States Supreme Court has instructed federal district courts to be vigilant in protecting a defendant's right to proceed in federal court:

> [T]he Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.

*Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907); *accord Katz v. Costa Armatori, S.p.A.*, 718 F. Supp. 1508, 1514 (S.D. Fla. 1989) (recognizing that the Supreme Court has "encouraged the federal courts to be vigilant in protecting the right to proceed in federal court"). The Fourth Circuit similarly observed, "Congress created the removal process to protect defendants. It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *McKinney v. Bd. of Trustees of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992).

One tactic in that "bag of tricks" is to join resident defendants even though they have no basis for a claim against them and no intent to pursue them to judgment. The courts, in order to protect defendants' right to remove, have held that such parties are fraudulently joined and that their citizenship must be disregarded for purposes of determining whether a case is removable based on diversity of citizenship. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The Eleventh Circuit has held that a defendant is fraudulently joined when the

4

plaintiff has no ***reasonable basis*** for a claim against the defendants. *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997) (There must be a "reasonable basis for predicting that state law might impose liability" on the non-diverse defendants.) (quoting *Bobby Jones Garden Apartments v. Suleski*, 391 F.2d 172, 176-77 (5th Cir. 1968)).

In her Motion to Remand, plaintiff repeatedly claims that the proper standard is whether a plaintiff has a possibility of stating a valid cause of action against the resident defendants under applicable law. Wyeth on the other hand contends that its statutory right to removal requires more than a mere possibility; it requires a reasonable basis under applicable law for the claim asserted.

In one of the cases later relied on by plaintiff, *Marshall v. Wyeth Pharmaceutical*, *et al.*, Case No. 04-PT-179-S (N.D. Ala.) (Exhibit C), Judge Robert Propst addressed this very question:

> The Court assumes that in this context, "possible" means more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role. Surely, in the absence of total hostility towards diversity jurisdiction, the mere naming of purely adjunct parties is <u>not</u> sufficient in and of itself to defeat jurisdiction.

*Id.* at p. 2 (emphasis in original). Plaintiff is correct that "[t]he Court must look to the allegations in the Complaint," but it may look further. The court is not limited to the allegations of an unverified complaint. In conducting a thorough inquiry into its jurisdiction, *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[O]ur removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction."), the court may consider affidavits, deposition transcripts, and other evidence before it. *See Crowe*, 113 F.3d at 1538; *Cabalceta v. Std. Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)(In deciding whether the non-diverse defendant has been fraudulently joined, the Court must look to plaintiff's pleadings

5

at the time of removal and consider any submitted affidavits and/or deposition transcripts); *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (collecting cases that authorize the court to look beyond the pleadings). This is because "the proceeding…for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Crowe*, 113 F.3d at 1538.

Thus, in *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-94 (5th Cir. 2000), the court affirmed a finding that in-state distributor defendants had been fraudulently joined, where plaintiffs had rested on the allegations of their complaint and failed to introduce evidence to contradict affidavits from the distributors stating that they had not engaged in the alleged wrongdoing. The court explained:

> As noted, our precedent establishes that a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment. While such a procedure requires that all *disputed* questions of fact be resolved in favor of the nonmoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. [W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*

*Id.* at 393-94 (citations and quotations omitted); *see also, El Chico Rests., Inc. v. Aetna Cas. And Sur. Co.*, 980 F. Supp. 1474 at 1479-80 (S.D. Ga. 1997)(denying remand where plaintiff failed to introduce evidence to contradict declarations submitted by defendants): *Budd v. Wyeth*, No. 03-CA-465 (W.D. Tex. Sept. 16, 2003)(attached as Exhibit D)(finding fraudulent joinder of Wyeth sales representatives where plaintiff failed to submit evidence contradicting affidavit of sales representatives showing that plaintiff could have no claim).

### B. The Fraud Allegations Lack Any Reasonable Basis

In support of her contention that she has asserted a viable fraud claim against the resident defendants, plaintiff cites twenty-six remand orders from District Courts sitting in the State of Alabama. Motion to Remand at p. 15-16. While few of the remand opinions contain any analysis or insight into what claim(s) against the resident defendant the courts found to have a reasonable basis, two exceptions are the remand opinions by Magistrate Judge Michael Putnam in *Juanita Johnson, et al. v. Wyeth, et al.*, Case No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (attached hereto as Exhibit E) and *McGowan v. Wyeth, Inc. et al.*, Case No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (attached hereto as Exhibit F). Because Judge Putnam remanded those cases on the basis that the plaintiffs therein had asserted a viable claim for fraud, Wyeth will begin its analysis with a discussion of why this Complaint fails to assert a fraud claim against any resident defendant.

As here, the plaintiffs in *Johnson* and *McGowan* asserted claims under the AEMLD, for breach of implied warranty, negligence, wantonness, fraud and suppression against Wyeth and its sales representatives. In finding that the complaints asserted a viable claim of fraud against the sales representatives, Judge Putnam held that the "plaintiffs need only *allege* that [the defendant sales representatives] misrepresented certain material facts about the risks associated with the use of Pondimin and Redux and that plaintiffs, through their physicians, *reasonably relied* on such misrepresentations." Exhibit E, p. 5-6 (emphasis added); Exhibit F, p. 5-6 (emphasis added). Here, plaintiff fails to meet even that very low standard, for she fails to allege the required element of reliance.

Plaintiff acknowledges the necessity of alleging reliance: "[u]nder Alabama law, in order to state a claim for fraudulent misrepresentation, a plaintiff *must allege* that the defendant made a misrepresentation of a material fact *upon which the plaintiff relied* and which resulted in injury

7

to plaintiff," and "[t]o allege a valid claim for fraudulent suppression, the plaintiff *must plead* that defendants had a duty to disclose a material fact, that the defendants concealed or did not disclose that fact, *induced plaintiff to act*, and that as a result of plaintiff's actions, she was injured." Motion to Remand at p. 13-14 (emphasis added).[4] Although admitting the necessity of alleging reliance, however, plaintiff cannot point to a single provision in her thirty-six page Complaint asserting this required element.[5] Plaintiff's failure even to allege reliance is, therefore, fatal to her claims of fraudulent misrepresentation and fraudulent suppression. *Ball v. Vogtner*, 362 So.2d 894 (Ala. 1978).[6]

Plaintiff attempts to gloss over this deficiency, providing the Court with a list of cases "where the District Court has reviewed similar allegations of fraudulent misrepresentation and suppression to those in th[is] case and found that plaintiff has alleged valid claims under Alabama law." Motion to Remand at p. 15. Counsel for Wyeth has reviewed the Complaints in all twenty-six cases. They are different from the Complaint here, for they all contain allegations

---

[4] Reliance is also an essential element of a claim for fraudulent suppression. *See Johnson v. Sorensen*, 2005 WL 1253829, *6 (Ala. May 27, 2005) (Exhibit G) (recognizing that "[a]lthough the term 'inducement' has often been used in the description of the fourth element of suppression, it is clear that a plaintiff's 'reasonable reliance' is an essential element of a suppression claim.").

[5] The only reference in the Motion to Remand to any alleged reliance is the statement on page ten that "[p]laintiff relied on such information through the representation of Dr. May." Conspicuously absent from this statement is any citation to the Complaint.

[6] In *Ball*, the plaintiff's fraud claim was *dismissed* with prejudice by the trial court. 362 So.2d at 895-896. The Alabama Supreme Court began its analysis of the fraud claim by recognizing that "[i]t is fundamental to an action for fraud that the representee must have been deceived by and relied upon the representation as an inducement to his action or inaction." *Id.* at 897 (citations omitted). Finding no allegations of reliance, the Court affirmed the dismissal of plaintiff's fraud claim, concluding that "[n]othing [plaintiff] has pleaded supports an allegation of fraud; therefore, the fraud claim was properly dismissed for failure to state a claim upon which relief can be granted." *Id.* at 897.

that the plaintiffs relied on the alleged fraudulent conduct of the defendants.[7]   Rule 9(b)'s particularity requirement means that generalized allegations of fraud, with unsupported allegations of reliance, do not provide a "reasonable basis" for a fraud claim.[8]  But even apart from that requirement, plaintiff's failure even to allege reliance on either her part or on the part of her prescribing physician materially distinguishes the present case from the string of cases cited in support of her Motion to Remand.  Under *Ball*, her failure to allege reliance is fatal.

Plaintiff does not allege reliance because she cannot in good faith do so.  The declarations filed by Wyeth in support of removal and in opposition to plaintiff's Motion to Remand demonstrate that *not one* of the individual resident defendants had any interaction with the plaintiff.  Therefore, they made no representations to her, and she could not have relied on representations that were never made.  Plaintiff likewise failed to allege that her prescribing

---

[7]   *See e.g. Johnson, et al. v. Wyeth, et al.*, Case No. CV-04-TMP-224-S (N.D. Ala.), Complaint at ¶ 89 (in support of their fraud claims, plaintiffs allege that "[t]he Plaintiffs justifiably relied on and/or was [sic] induced by the misrepresentations and/or active concealment and relied on the absence of safety information which the Defendants did suppress, conceal and/or fail to disclose to the Plaintiff's detriment"); *McGowan v. Wyeth, Inc. et al.*, Case No. CV-04-TMP-298-S (N.D. Ala.), Complaint at ¶s 116 and 122, (in support of their fraud and suppression claims, plaintiffs allege that they "reasonably relied upon these inaccurate and fraudulent misrepresentations, and relied upon the absence of adverse safety information about the drugs which Defendants did suppress, conceal, or fail to disclose, and suffered damaged and injury as a result thereof.").

[8]   Plaintiff's Complaint fails to comply with Rule 9(b)'s requirements by simply asserting blanket catch-all fraud allegations against "the Defendants."  [Complaint, ¶¶ 118-120, 122-124].  When multiple defendants are alleged to have committed fraud, Rule 9(b)'s goal of fair notice to each defendant requires a plaintiff to at least reasonably notify the defendants of their purported role in the fraud.  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997); *McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Service, Inc.*, 131 F.Supp.2d 1296, 1301 (M.D. Ala. 2001) (dismissing fraud claims because fraud "allegations simply fail to distinguish among Defendants and specify their respective role in the alleged fraud, thereby not fulfilling the pleading requirements of Rule 9(b)"); *see also In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 283-284 (S.D. N.Y. 2001) (holding that general catch-all fraud allegations against "defendants" failed to satisfy the requirements of Rule 9(b)).

physician relied on the alleged fraudulent conduct of the defendants. The attached declaration of her prescribing physician, Dr. Stuart May, refutes plaintiff's contention that she "anticipates that discovery will show that the prescribing physician, Dr. Stuart May, relied on information provided by Defendants." Motion to Remand at p. 10. Dr. May states that he "do[es] not rely upon the promotional materials, oral statement or 'sales' information provided to me by pharmaceutical sales representatives." Declaration of Stuart May, ¶ 3 (Exhibit H).[9]

    **C.    The Remaining Claims Lack A Reasonable Basis**

        **1.    Jennifer Andrews and Bill Richards *never* detailed HRT medication to Dr. Stuart May.**

As a threshold matter, plaintiff has no reasonable basis for a claim against Jennifer Andrews and Bill Richards because they never detailed HRT medication to her doctor. Plaintiff bases her claims against the two solely up on their status as employees of Wyeth who allegedly detailed Premarin, Prempro and MPA to Dr. May. Complaint, ¶ 13. But, in fact, they did not do so. *See* Exhibits I and J.

Plaintiff attempts to contest this fact as to Jennifer Andrews, saying that "Defendant Wyeth's own database of call notes and other information regarding physician visits indicates that Defendant Andrews *visited* Dr. May's office." Motion to Remand at p. 10 (emphasis

---

[9]  Dr. May's declaration further distinguishes this case from many of the cases cited by plaintiff on pages 15 and 16 of her Motion to Remand. The plaintiffs in at least thirteen of those cases submitted an affidavit from their prescribing physician stating they relied on representations made by the defendant sales representative when dispensing the drug at issue to the plaintiff. In *Cash v. Wyeth, et al.*, 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004), Magistrate Judge Armstrong indicated that the sales representative defendants would have been found to be fraudulently joined except for the affidavit of plaintiff's treating physician which stated that he in fact relied on the information provided by the defendant sales representatives, who promoted the drug at issue as safe and effective. (Exhibit K, p. 6).

10

added).[10]  This goes too far: under plaintiff's apparent interpretation of the law, all a sales representative must do is *visit* a doctor's office to be held liable – *whether or not she detailed the product in question*.  Wyeth does not dispute that Ms. Andrews, an employee of another company, visited Dr. May's office on many occasions.  But her declaration establishes that she never met with Dr. May concerning the HRT medications that are at issue in this case.  *See* Declaration of Jennifer Andrews (Exhibit I).  That she met with Dr. May concerning *other* medications marketed by Wyeth provides no basis upon which to impose any personal liability on Ms. Andrews in this case.

### 2.  The AEMLD claims lack a reasonable basis as to the individual defendants.

Plaintiff cannot establish an AEMLD claim against the individual defendants (Williams, Payne, and Blount) who did detail Wyeth's hormone therapy drugs to Dr. May or their supervisor (Richards).  To state a cause of action under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product."  *Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (citing *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976)).  These Defendants -- three sales representatives and a sales manager -- cannot be liable under the AEMLD because they are not the "manufacturers" or "sellers" of HRT.

While the AEMLD does expose a manufacturer, seller, or supplier to liability, such exposure does not extend to the lower level employees of a seller or supplier because "neither the applicable case law nor the policy objectives articulated by Alabama and other states' courts can support the extension of the AEMLD to encompass [employees of the seller or supplier]."

---

[10]  Plaintiff does not even attempt to contest the fact that Defendant Richards never detailed HRT medication to Dr. May.

11

*Bowman v. Coleman Co., Inc.*, No. 96-0448-P-C, Slip. Op. at 8 (S.D. Ala. Sept. 3, 1996)(Exhibit L)(retail store manager is not a "seller"). [11]

Applying Alabama law in the Rezulin MDL litigation, the court held that the AEMLD does not impose liability on pharmaceutical representatives who "neither manufactured, sold nor supplied [the drug in question]." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 287 (S.D.N.Y. 2001). As Judge Kaplan explained, based on "'moral notions of consumer protection and on economic and social grounds' . . . the AEMLD imposes liability only on manufacturers, sellers and suppliers" and not on "a corporate employee," such as a pharmaceutical representative or sales manager. *Id*. at 287-88 (quoting *Atkins*, 335 So. 2d at 139); *see also In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 138-39 (S.D.N.Y. 2001) (pharmaceutical manufacturer's territory representative not liable under the AEMLD).

Here, as in the *Rezulin* cases, the individual defendants were not manufacturers or sellers of the HRT medications at issue. As the Complaint alleges, they were representatives of Wyeth "[who were] acting within the course and scope of [their] employment with the Wyeth Defendants while transacting business in Alabama." Complaint, ¶¶ 8, 10. As a result, they cannot be held liable under the AEMLD.

### 3. Plaintiff cannot maintain a claim against the individual defendants for negligence/wantonness.

There is also no reasonable basis for a negligence/wantonness claim against these defendants because the plaintiff in products-liability cases may proceed on negligence/wantonness theories only against "manufacturers" and "sellers." *Norton Co. v.*

---

[11] The Restatement (Third) of Torts – Product Liability likewise recognizes that a sales representative is not a "seller" subject to a product liability claim. *See* § 20, comment g. (stating that "sales personnel and commercial auctioneers are also outside of the rules of this Restatement.").

*Harrelson*, 176 So. 2d 18, 20 (Ala. 1965) (on a negligence theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article"); *Bowman v. Coleman Co., Inc.*, No. 96-448-P-C *9-11 (S.D. Ala Sept. 3, 1996) (finding that retail manager owed no duty to plaintiff upon which plaintiff could predicate a negligence or wantonness claim arising out of the purchase of an allegedly defective heater) (Exhibit L).  Because these individual defendants are neither manufacturers nor sellers of the HRT drugs that they detailed, Plaintiff cannot maintain an action against them for negligence/wantonness.

    **4.  Plaintiff has no reasonable basis for a warranty claim against the individual defendants.**

  Plaintiff cannot maintain a claim for breach of express or implied warranty because the individual defendants were neither "sellers" nor "suppliers" of Prempro, Premarin or MPA.  The *sine qua non* of a breach of warranty claim – whether for breach of express warranty or implied warranty – is that a warranty is made by "the seller" of the goods.  The UCC is explicit on this point: its express and implied warranty provisions apply only to "sellers."  *See* Ala. Code § 7-2-313(1) ("Express warranties by the seller are created as follows . . ."); *id.* at § 7-2-314(1) ("a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"); *see also*, *Laboto v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408 (10th Cir. 1958)(drug store employee who sold defective product was fraudulently joined because he was not a "seller" and thus could not be held liable for breach of warranty); *Johnson v. Parke-Davis*, 114 F.Supp.2d 522, 525 (S.D. Miss. 2000) ("Plaintiffs have not cited any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product."); *McCurtis v. Dolgencorp, Inc.*, 968 F.Supp. 1158, 1160 (S.D. Miss. 1997)(stating that courts cannot hold sales representatives liable for breach of warranty when they are "not in the

business of selling products but rather are *employed* in the business of selling products")(emphasis added); *Rezulin*, 133 F. Supp. 2d at 286 ("seller" who makes warranties about a prescription medicine is the "pharmaceutical manufacturer," not the professional representative).

The warranties allegedly breached in this case run not between these individual defendants and plaintiff, but rather between their employer, the actual "seller"*,* and plaintiff. *See, e.g.*, *Hillburn v. Fletcher Oil Co.,* 495 So. 2d 613, 615 (Ala. 1986) ("Generally when an agent, acting within his real or apparent authority, enters a contract on behalf of his principal, only the principal is bound and subject to suit on the contract"). Finally, even if these defendants could have been parties to warranties under the UCC, the UCC would have required the plaintiff to give them notice of the breach of warranty. *See* Ala. Code § 7-2-607; *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1103 (Ala. 1983) (notice is condition precedent to action for breach of warranty); *Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc.*, 365 So. 2d 968, 971 (Ala. 1978). Plaintiff does not even allege that she provided notice of the purported breach of warranty to these defendants.

### D. The Claims Against Qualitest Pharmaceuticals, Inc. Lack A Reasonable Basis.

In its Notice of Removal, Wyeth pointed out that Qualitest, as a passive distributor of MPA, was fraudulently joined because the closed container defense (also known as the lack of causal relation defense), protects it from liability. *See Atkins v. American Motors. Corp.*, 335 So.2d 134, 143 (Ala. 1976)(lack of causal relation defense available to distributor who received product without contributing to its defective condition, and had no opportunity to inspect the product that was superior to that of the plaintiff consumer). Plaintiff seeks to remand this case claiming that this defense does not apply in this case. Motion to Remand at p. 7. Plaintiff even

goes so far as to contend that this defense has not been applied in cases outside of the "prepackaged food" context. *Id.* To the contrary, the defense has been applied to absolve passive distributors from liability in cases involving, among other things, allegedly defective agricultural chemicals, automobiles, latex gloves and cigarettes.[12]

For example, the plaintiff's inability to demonstrate the requisite causal relation between plaintiff-decedent's injuries and the acts of a local distributor was the basis for Judge Hand's decision in *Johnson v. General Motors Corp.*, 82 F.Supp.2d 1326 (S.D. Ala. 1997). He denied the plaintiff's motion to remand, finding that the dealer "performed no service or body work on the vehicle, did not modify the vehicle in any way and had absolutely no input in the design and manufacturing process." *Id*. at 1328. In so doing, Judge Hand endorsed the principle that a mere distributor has no duty to warn unless this distributor knew or should have known of the defect:

> …the Court agrees that [the dealer] cannot be deemed to have a duty to warn, either verbally or by provision of an owners manual, of defects … in the Cheverolet…unless it knew or should have known that such alleged defect could create a danger when used in its intended manner. [The dealer] is a distributor, not a manufacturer, of the used Blazer in issue. ***Plaintiff has submitted no evidence beyond supposition that [the dealer] had any knowledge of the defect alleged by the plaintiff in this litigation. [The dealer's] position is thus similar to parties to whom the "learned intermediary doctrine" is applied.***

*Id*. at 1329 (emphasis added)(citations omitted). *See also*, *Brock v. Baxter Healthcare Corp.*, 96 F.Supp.2d 1352 (S.D. 2000) (denying motion to remand because there was no causal relation between the mere distribution of the product and the injuries allegedly suffered by the plaintiff); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213 (S.D. Ala.

---

[12] *See Fleming Farms v. Dixie Ag. Supply, Inc.*, 631 So.2d 922 (Ala. 1994) (agricultural products); *Johnson v. General Motors Corp.*, 82 F.Supp.2d 1326 (S.D. Ala. 1997 (automobile); *Brock v. Baxter Healthcare Corp.*, 96 F.Supp.2d 1352 (S.D. Ala. 2000) (latex gloves); and *Wakeland v. Brown & Williamson Tobacco Corp.* 996 F.Supp. 1213 (S.D. Ala. 1998)(cigarettes).

1998)(dismissing AEMLD claim against local cigarette distributors because their handling of the cigarettes did not contribute to their allegedly defective nature: "defendants involved only in distributing and selling cigarettes are entitled to the defense of lack of causal relation as a matter of law.").

The same result is required here as plaintiff cannot establish a causal relation between the activities of Qualitest in distributing MPA and the alleged defect complained of by plaintiff. As the uncontradicted declaration of Qualitest's president establishes, once Qualitest receives the sealed bottles of MPA, it does not open them for inspection. Declaration of William Propst (Exhibit M). It sells these unopened bottles of MPA to other wholesalers. *Id.* Qualitest does not and has not sold MPA to the public, and it has not recommended MPA to any physician or pharmacist. *Id.* Qualitest is, in the purest sense, a distributor of MPA with absolutely no involvement in manufacturing MPA, packaging MPA, labeling MPA or warning the public concerning MPA. *Id.* Based on Qualitest's limited role as a passive distributor of a finished product, there is no causal relation between its actions and the alleged defect in MPA of which plaintiff complains.

Plaintiff cites *Judson v. Nissan Motor Co.*, 52 F. Supp.2d 1352 (M.D. Ala. 1999) in support of her argument that all a distributor must do is place the allegedly defective product into the stream of commerce.[13] However, *Judson* does not support such a broad extension of liability against distributors under the AEMLD. The basis for the court's finding of liability against the dealer in *Judson*, was the fact that the dealer inspected and made adjustments to the automobile

---

[13]  In the Motion to Remand, plaintiff refers to the affidavit of Mr. Propst in support of the undisputed fact that "Qualitest placed HRT drugs [into the] stream of commerce." Motion to Remand at p. 7-8. Plaintiff then makes the quantum leap to declare that based on this fact alone, it is "[w]ithout question [that] Plaintiff has alleged a valid claim against Qualitest under AEMLD." Motion to Remand at p. 8.

16

at issue. *Id*. at 1362. Qualitest however is merely a passive distributor of MPA. *Compare Evelyn Johnson v. General Motors Corp.*, 82 F.Supp.2d 1326 (S.D. Ala. 1997)(finding passive car dealer fraudulently joined where it performed no work on the automobile at issue) *with Judson v. Nissan Motor Co.*, 52 F. Supp2d 1352 (M.D. Ala. 1999)(finding a valid claim against dealer that actively made adjustments to the automobile).

This lack of causal relation[14] is not only fatal to plaintiff's AEMLD claim, but also extinguishes her claims of negligence/wantonness, breach of express warranty, breach of implied warranty of merchantability and fraud, as causation is an essential element of each claim. *See Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 110 (Ala. 2003) (citations omitted) (causation is an element of a breach of warranty claim); *Martin v. Arnold*, 643 So.2d 564, 567 (Ala. 1994)(causation is an element of a claim for negligence and wantonness); *First Community Bank v. Spivey*, 694 So.2d 1316, 1320 (Ala. 1997)(causation is an element of claim for fraud); *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 324 (Ala. 1999)(causation is an element of a claim for suppression). All of plaintiff's claims against Qualitest fail as a matter of law.

## CONCLUSION

Because plaintiff has no reasonable basis for sustaining a claim against any of the non-diverse defendants, these defendants must be deemed fraudulently joined and Plaintiff's Motion to Remand must be DENIED.

---

[14] As in the case at bar, proximate cause is a question of law because there is a total lack of evidence from which one can reasonably infer a direct causal relation between the defendant's conduct and the resulting injury to the plaintiff. *See*, *Lyon v. Volkswagen of America, Inc.*, 676 So.2d 356 (Ala. 1996).

        /s  Lee H. Copeland
        Lee H. Copeland (ASB-3461-072L)
        Mitchel H. Boles
        J. David Martin
        **Attorneys for Defendants**
        **Wyeth a/k/a Wyeth, Inc. and**
        **Wyeth Pharmaceuticals Inc.**

**OF COUNSEL:**

Lee H. Copeland
Mitchel H. Boles
J. David Martin
COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, Alabama 36101-0347
Telephone:   (334) 834-1180
Facsimile:   (334) 834-3172

## CERTIFICATE OF SERVICE

    I hereby certify that on 3rd day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Jere L. Beasley**
  libby.rayborn@beasleyallen.com jere.beasley@beasleyallen.com
- **Andy D. Birchfield, Jr**
  andy.birchfield@beasleyallen.com
- **Emily Sides Bonds**
  ebonds@walstonwells.com
- **Donald R. Jones, Jr**
  don@djoneslaw.com kristi@djoneslaw.com
- **Ted G. Meadows**
  ted.meadows@beasleyallen.com
  ann.kaufmann@beasleyallen.com;amy.brown@beasleyallen.com;jason.bell@beasleyallen.com
- **P. Leigh O'Dell**
  leigh.odell@beasleyallen.com
- **Myron C. Penn**
  myronpenn28@hotmail.com

- **Melissa A. Prickett**
  melissa.prickett@beasleyallen.com
  ann.kaufmann@beasleyallen.com;andy.birchfield@beasleyallen.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

**William Walter, III**
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ  07940

**Bill Blount**
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ  07940

**Jennifer Andrews**
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ  07940

**Bill Richards**
c/o Wyeth d/b/a Wyeth, Inc.
Five Giralda Farms
Madison, NJ  07940

                                                         /s  Lee H. Copeland
                                                         Of Counsel