IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
04 FEB -3 AM 10: 15
U.S. DISTRICT COURT
N.D. OF ALABAMA

SANDRA CASH, )
 )
    Plaintiff, )
 )
 )
 )
vs. ) CIVIL ACTION NO. 03-RRA-3378-E
 )
WYETH, et al., )
 )
    Defendants. )

ENTERED
FEB - 3 2004

## MEMORANDUM OF DECISION

This action was removed from the Circuit Court of Calhoun County, Alabama. The plaintiff has filed a motion to remand. The complaint alleges that she suffered valvular heart disease as a result of taking the drug Pondimin or Redux. (The defendants state that the plaintiff took Pondimin only.) The question before the court is whether defendant Anthony Cherry, Wyeth's sales representative, was fraudulently joined as a defendant in order to defeat diversity jurisdiction.

Remand must be granted if there is a possibility that the state court would find that the plaintiff has stated a claim against the defendant in question. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). Evidence may be considered as well as the allegations in the complaint:

> To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549. The federal court makes these determinations based on the plaintiff's pleadings at the

20

time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties.

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), *quoting B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Along with other submissions, the defendants have submitted the affidavit of Cherry, and the plaintiff has presented the affidavit of her doctor, Omar Khalaf. The parties have not conducted discovery.

The complaint alleges the following against Cherry:

> 22. Upon information and belief the positive tortious acts which were committed by the Sales Rep Defendant in his individual and/or corporate capacity, include, but are not limited to, the following:
>
> a. Sales Rep Defendant <u>failed to convey adequate warnings to the Plaintiff through the prescribing physician</u> set forth above regarding the risks of prescribing fenfluramine (Pondimin®) and dexfenfluramine (Redux™);
>
> b. Sales Rep Defendant was in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™) which has caused harm to the Plaintiff SANDRA CASH;
>
> c. Sales Rep Defendant <u>negligently distributed, marketed, advertised and/or promoted</u> the drugs fenfluramine (Pondimin®) and dexfenfluramine (Redux™);
>
> d. Sales Rep Defendant made <u>fraudulent and reckless misrepresentations regarding the character, safety and efficacy</u> of the drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), and;
>
> e. Sales Rep Defendant, <u>with knowledge of unreasonable risks</u> associated with the ingestion of fenfluramine (Pondimin®) and dexfenfluramine (Redux™), alone and/or in combination with phentermine <u>continued to make misrepresentations regarding the character, safety and efficacy</u> of drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), while providing and/or offering incentives, rebates, reimbursements, perks, and/or other consideration to Plaintiff's prescribing physician

2

> in furtherance of attempting to influence the prescribing of said diet drugs.
>
> 23. Defendant Anthony Cherry is a citizen of Calhoun County and is over nineteen years of age. At all times material hereto, this Defendant was <u>in the business of promoting, marketing , developing, selling and/or distributing the pharmaceutical drugs fenfluramine and/or dexfenfluramine in the State of Alabama and did market, develop, sell, detail and/or distribute said drugs to Plaintiff, Sandra Cash's prescribing physician, Omar Khalaf, M.D.</u> This defendant was also involved in a <u>conspiracy to conceal certain information relating to the dangers associated with the subject drug</u> products from the consuming public, including but not limited to Plaintiff.

*Complaint*, ¶¶22-23 (emphasis added). Thus, the complaint alleges that Cherry failed to warn of the dangers of Pondimin, negligently marketed and distributed this dangerous drug, recklessly and intentionally misrepresented its dangers, and conspired to conceal its dangers.

The defendants state that under Alabama law the plaintiff clearly cannot state a claim against Cherry. They cite law holding that, absent personal participation, an employee is not liable for the negligence of his employer, that the fraud and conspiracy claims are not pled with particularity, and that a conspiracy claim fails when the claims underlying the conspiracy fail. Moreover, they factually contend that Cherry said nothing about Pondimin whatsoever. Relying on Cherry's affidavit, the defendants state that Cherry did not even promote Pondimin, that Wyeth composed warnings and other information concerning Pondimin for Cherry, who was not a part of that process, and that Cherry did not have the expertise to question the accuracy of any information supplied by Wyeth. Cherry further states in his affidavit that he was unaware of any association between Pondimin and the heart disease of which the plaintiff complains, and he made no representation whatsoever concerning this

3

drug. The defendants assert in their written opposition to remand that this evidence is uncontroverted. However, Dr. Khalaf states that Cherry visited his office and "promoted and marketed" Pondimin, *Khalaf Affidavit*, ¶3, and that Cherry "continuously represented that [Pondimin and Redux] were safe and effective. Also, [Cherry] represented to [him] that the drugs were safe and effective for long term use," *id.* at ¶6.[1] Khalaf additionally states:

> The reliance I placed on Mr. Cherry and Mr. Lavender regarding safety issues for Pondimin and Redux was made even more critical by the fact that warnings to physicians prescribing Pondimin and Redux that these drugs could cause valvular heart disease were not contained in the Physicians' Desk Reference ("PDR") until the 1998 edition, which was after Pondimin and Redux were withdrawn from the market.

*Id.* at ¶7.

### Whether to Defer to MDL Judge

The defendants want the court to allow this remand issue to go to the MDL court. In her motion to remand, the plaintiff responds that in an MDL hearing the judge "indicated a preference" for all remand motions to be handled by the various district courts. In their written opposition to remand, the defendants respond that a copy of the transcript of the 1998 hearing stating such "sentiments" has not been supplied by the plaintiff. The defendants, however, do not deny that the judge did, in fact, indicate such a preference.

The defendants refer to statements in an August, 2003 memorandum written by the MDL judge:

---

[1] Materials presented to the court by the defendants included information sent to Wyeth's sales force. In "Questions and Answers About Pondimin" and in the Pondimin "Fact Sheet" it is stated that Pondimin is for short-term use.

4

> [R]ecurrent issues have continued to emerge in connection with motions to remand to state courts cases removed by Wyeth on the basis of diversity of citizenship. We have now developed a broader perspective than is usually available to individual transferor courts in dealing with widespread efforts fraudulently to join Phentermine manufacturers as a tactic to thwart removal of cases to the federal courts. Likewise, we are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal. Many of these issues have common patterns as well as ramifications far beyond any specific case. Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203.

This memorandum was addressing motions to remand all pending *cases* to the various transferor courts on the ground that the MDL had done its work. The court gave several reasons why the cases should not be remanded to the transferor courts, one of which was that, after all its work, the MDL had developed a "broader perspective than is usually available" to the transferor courts in dealing with motions to remand to state courts based on fraudulent joinder.

> Also, the defendants cite *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990):

> Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, *see In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988), and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years, *see In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 154-59 (2d Cir.1987) (describing history of proceedings before Judge Weinstein), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served. We hold, therefore, that the MDL

>Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, *cf. United States v. United Mine Workers*, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947) (district court has authority to issue injunction while jurisdictional questions are pending), that objection to be resolved by the transferee court.

*Id.* at 9. This language points out what lies at the heart of MDL litigation: common questions of law or fact.

The question of whether Cherry was negligent or made fraudulent statements is specific to this case. The MDL court would not be in a better position to decide remand than this court. Also, this court has heard oral argument and considered the parties' contentions. Wherefore, the court will exercise its discretion to decide the question of fraudulent joinder.

### Whether There Is Fraudulent Joinder

The defendants' argument against remand is premised upon the evidence being uncontroverted that Cherry did not promote or market or make any representation to Dr. Khalaf about Pondimin. If that were true, the motion to remand might be due to be denied. But there is clearly a factual dispute about what Cherry did and said, as Dr. Khalaf states that Cherry visited his office, promoted and marketed Pondimin, and represented that Pondimin was safe and effective for long-term use. Wherefore, there is at least a possibility that the plaintiff has a claim against Cherry.

### Decision

For the reasons stated above, the court has decided to exercise its discretion to decide

the remand issue, this is not a case of fraudulent joinder, and the motion to remand is due to be granted for lack of subject matter jurisdiction. An appropriate order will be entered.

DONE this 2nd day of February, 2004.

/s/ Robert R Armstrong
Robert R. Armstrong, Jr.
United States Magistrate Judge