IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BARBARA D. GRAHAM; | * |
| | * |
|     Plaintiff, | * |
| | * |
| v. | * CASE NO. 2:05-cv-624 |
| | * |
| WYETH d/b/a WYETH, INC.; WYETH | * |
| PHARMACEUTICALS, INC.; QUALITEST | * |
| PHARMACEUTICALS, INC.; BILL BLOUNT; | * |
| WALTER WILLIAMS, III; JENNIFER | * |
| ANDREWS; CHARLES H. PAYNE; BILL | * |
| RICHARDS, et al., | * |
| | * |
|     Defendants. | * |

PLAINTIFF'S REPLY BRIEF
IN SUPPORT OF MOTION TO REMAND

Because the court does not have subject matter jurisdiction, Plaintiff respectfully urges the Court to grant the Motion to Remand this action to the Circuit Court of Bullock County, Alabama. 28 U.S.C. § 1447(c).

Plaintiff asserts valid claims under Alabama's Extended Manufacturer's Liability Doctrine (AEMLD), negligence, breach of express warranty, breach of implied warranty, fraud and suppression against each defendant – resident and non-resident alike. Each party to this action is properly joined. The citizenship of the parties is not diverse as required by 28 U.S.C. § 1332. Plaintiff is a resident of Alabama. (Compl. ¶ 1.) Defendant Qualitest Pharmaceuticals, Inc. is an Alabama corporation with its principal place of business in Alabama. (Compl. ¶ 5.) Defendants Wyeth, Inc. and Wyeth Pharmaceuticals, Inc. are Delaware corporations with their principle places of business in New Jersey. (Compl. ¶ 2.) Defendants Charles H. Payne and Bill

Richards, managers of Wyeth Pharmaceuticals, are residents of Alabama.  Defendants Walter

Williams, III, Bill Blount, and Jennifer Andrews, all sales representatives of Wyeth

Pharmaceuticals, are residents of Alabama.  (Compl. ¶¶ 7-10.)

## ARGUMENT

### I.    Defendants Have Failed To Meet the Heavy Burden of Proving Fraudulent Joinder

Defendants contend that Plaintiff has misstated the fraudulent joinder standard.  Plaintiff

stands on her recitation of the fraudulent joinder standard as a correct statement of the law in the

Eleventh Circuit.

This Court's recitation of the law in *Thomas v. Jim Walter Homes, Inc.* supports

Plaintiff's conclusion:

> The burden of proving fraudulent joinder rests with the removing party.  *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983).  The Eleventh Circuit prescribes a two-fold test for determining whether a defendant has been fraudulently joined:  the removing party must show either (1) **that there is <u>no possibility</u> the plaintiff could establish a cause of action against the resident defendant in state court** or 2) that the plaintiff fraudulently pleaded jurisdictional fact. *Id.* at 1440.  These determinations should be made based upon the plaintiff's pleadings at the time of removal. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).  When considering the issue of fraudulent joinder, "the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts."

*Thomas v. Jim Walter Homes, Inc.*, 918 F. Supp. 1498, 1501 (M.D. Ala. 1996) (Albritton, J).

The Court very recently affirmed the correctness of this standard in *Shields v. Washington*

*National Ins. Co.*, 2005 WL 1523556 (M.D. Ala. June 28, 2005) (Albritton, J.):

> In *Parks v. New York Times* 308 F.2d 474, 478 (5th Cir. 1962), the court explained that
>
> > There can be <u>no fraudulent joinder unless it [is] clear that there can be no recovery under the law of the state on the cause alleged</u>, or on the facts in view of the law as they exist when the petition to remand is heard.  One or the other at least would be required before it could be said that there was no intention to get a joint judgment, and that there was no colorable ground for so claiming.

*Shields,* 2005 WL 1523556, at 3 (citing *Parks v. New York Times,* 308 F.2d 474, 478 (5th Cir. 1962).

The law in the Eleventh Circuit is not whether there is a reasonable basis for Plaintiff's claims (though Plaintiff believes she meets this standard as well), but whether there is a possibility that Plaintiff can establish a cause of action again the resident defendants in state court.  To prevail, Defendant must show that there is no possibility that Plaintiff can recover under any claim contained in the complaint:

> If there is even a possibility that a state court would find that the Complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.  The plaintiff need not have a winning case against the allegedly fraudulent defendant; **he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.**

*Triggs*, 154 F.3d at 1287 (citations omitted); *see Bobby Jones Garden Apts. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968).

Defendants contend that Plaintiff joined Alabama Defendants solely for the purpose of defeating diversity jurisdiction and that Plaintiff does not seriously intend to prosecute claims against them.  Plaintiff is master of her own complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  Plaintiff intends to pursue to judgment all claims stated in the Complaint.  Where she has stated valid claims under Alabama law, Plaintiff's motivation in bringing those claims is irrelevant.  In *Triggs,* the Eleventh Circuit addressed very similar arguments to those made by Defendants here*:*

> We reject defendants' argument; it is inconsistent with binding precedent.  Supreme Court precedent is clear that a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue judgment against the defendant. In *Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart*, 227 U.S. 184 (1913), the plaintiff filed an action for personal injuries against the railway company and its servant, Barrett, whose immediate negligence allegedly caused the injury.  Plaintiff and defendant

Barrett were citizens of Missouri, but the railway company was diverse.  The railway company sought to remove the case to federal court, arguing, that Barrett was joined for the sole and fraudulent purpose of preventing a removal, being a person of little or no property while the company was fully able to pay.  Rejecting the argument, the Court held:  "[o]n the question of removal, we have not to consider more than whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it . . . as the record stood when the removal was denied." *Id.* At 194.  The Court also said:

> Again, the motive of the plaintiff, taken by itself, does not affect the right to remove.  If there is a joint liability, he had an absolute right to enforce it, whatever the reason that makes him wish to assert the right. . . Hence, the fact that the company is rich and Barrett poor does not affect the case.

*Id. At 193.*

*Triggs,* 154 F.3d at 1290-1291.

The removing party bears the heavy burden of proving that the joinder of the resident defendant was fraudulent.  *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983); *see Frontier Air Lines, Inc. v. United Air Lines, Inc.,* 758 F. Supp. 1399, 1404 (D. Colo. 1989) (quoting *Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 152 (1914)).  Moreover, as the Court noted in *Thomas*, in the Eleventh Circuit there is a "strong policy . . . resolving any doubts in favor of deference to the state court." *Thomas,* 918 F. Supp. at 1504 (Albritton, J.).

Defendants have failed to meet their heavy burden of proving fraudulent joinder of the Alabama defendants.   Viewing the Complaint's allegations in a light most favorable to Plaintiff, Plaintiff has stated several valid claims against all Alabama Defendants.   Federal diversity jurisdiction is not present.

## II.    Plaintiff Has Alleged Valid Claims of Fraudulent Misrepresentation and Fraudulent Suppression Against Alabama Defendants

Defendants argue that Plaintiff has failed to state a viable claim of fraudulent misrepresentation against the Alabama managers and sales representatives because Plaintiff failed to allege reasonable reliance.  Plaintiff disagrees.

Plaintiff, in Count V of her Complaint, alleges that defendants negligently, recklessly, intentionally and fraudulently made material misrepresentations that the HRT drugs Premarin, Prempro and MPA, were safe. The Defendants did so with the intent to induce physicians to prescribe and for consumers, including Plaintiff, to purchase the HRT drugs Premarin, Prempro and MPA. (Compl. ¶ 118.) Moreover in the Complaint, Plaintiffs also allege that "At the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth." (Compl. ¶ 119.) Lastly, Plaintiff alleges that "as a proximate result of the Defendants' wrongful conduct, Plaintiff was injured." (Compl. ¶ 120.) These allegations are sufficient to state a claim under Alabama law for fraudulent misrepresentation.

Under Federal Rule 8(a), the United States Supreme Court has mandated liberal pleading which requires that plaintiff give defendant reasonable notice of the claim being alleged. *Swierkiewica v. Sorema*, 534 U.S. 506 (2002); *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Plaintiff's allegations provide Defendants with ample notice of the fraudulent misrepresentation claim being asserted against them.

Defendants point to Dr. Stuart May's affidavit as conclusive evidence that he did not rely on any statements made by Wyeth's sales representatives or any materials given to him by Wyeth. Dr. May does not deny that he was detailed by the Alabama sales representatives – only that he did not rely on their representations[1]. The motion before the Court is not one for summary judgment but a motion to remand. Discovery has not been taken in this case. Dr. May has not been subject to cross-examination on a number of issues, some of which are - Is Dr. May

---

[1] Defendants argue that no claims may be maintained against Defendants Jennifer Andrews and Bill Richards because they never detailed Dr. May on HRT medication. Defendant Wyeth's HRT sales call database indicates that Andrews detailed Dr. May. Further, Bill Richards is identified as a District Manager for Wyeth in a letter produced

biased?  What is Dr. May's business relationship with Defendant Wyeth?  Is Dr. May being paid or has he ever been a paid consultant, speaker, or agent of Wyeth? What was his understanding of the reason(s) for prescribing HRT?  Where did these understandings come from?  Did they come from sales representatives?  What did the sales representatives refuse or fail to tell him regarding HRT?  What was he told or not told by sales representatives about WHI?  How did that affect his decision to continue Plaintiff on HRT?.  All of these are relevant questions that can properly be addressed through the course of discovery.  Upon Motion to Remand, however, the Court's duty is "not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Whether Dr. May relied on Wyeth and its representatives' representations is a question properly left to a jury.  *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 412 (Ala. 1997); *see Barkley v. State Farm & Cas. Co.*, 205 WL 1587796 (S.D. Ala. June 30, 2005).

Furthermore, Defendants do not attempt to deny that Plaintiff has stated a viable claim for fraudulent suppression against all Alabama Defendants.  In her Complaint, Plaintiff alleges that Defendants fraudulently suppressed material information regarding the safety and efficacy of the HRT drugs, Premarin, Prempro and MPA and their harmful side effects in order to induce physicians to prescribe these drugs and to induce consumers, including Plaintiff, to purchase the HRT drugs, Premarin, Prempro and MPA.  (Compl. ¶ 122.)  Moreover, Plaintiff alleges that Defendants suppressed the fact that HRT was not safe and that Defendants were under a duty to communicate this information to Plaintiff and her physician.  (Compl. ¶ 123.)

Previously, Plaintiff directed the Court's attention to numerous orders issued by United States District Courts in Alabama granting motions to remand involving similar facts and

---

by Defendant Wyeth from Defendant Payne to Wyeth regarding unlawful sales tactics being sanctioned by Wyeth management.   (See Exhibit A)

claims.[2]  As noted before, many of those decisions involved Wyeth.  Each of the decisions cited

by Plaintiff involved claims against sales representatives for both fraudulent misrepresentation

and fraudulent suppression.  Defendants argue that these decisions are somehow not applicable

and offer Magistrate Judge Putnam's decisions in *Johnson v. Wyeth* and *McGowen v. Wyeth* in

support of their argument.  Each decision, including *Johnson* and *McGowen*, resulted in the case

being remanded to state court.  Each of the decisions listed, including *Johnson* and *McGowen*,

involved claims against sales representatives for both fraudulent misrepresentation and

suppression.

In sum, Plaintiff has stated valid claims for both fraudulent misrepresentation or

fraudulent suppression against all Defendants, including Alabama Defendants.    Diversity

jurisdiction is not present.

### III.    Plaintiff Has Stated Valid Product Liability (AEMLD) Claims Against Alabama Defendants

#### A.    Alabama Sales Representatives and Managers

Under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), one

who sells a product in a defective, unreasonably dangerous condition may be held liable

---

[2] *Floyd v. Wyeth*, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.*); Crittenden v. Wyeth*, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); *Terrell v. Wyeth*, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.); *Ballard v. Wyeth*, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Brunson v. Wyeth*, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Blair v. Wyeth*, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Storey v. Wyeth*, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); *Cash v. Wyeth*, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); *Marshal v. Wyeth*, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); *McGowan v. Wyeth*, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); *Johnson v. Wyeth*, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); *Bradford v. Wyeth*, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Smith v. Wyeth*, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Boudreaux v. Wyeth*, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Bridges v. Wyeth*, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); *Hough v. Wyeth*, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); *Brogden v. Wyeth*, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); *Reeder v. Wyeth*, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); *Eaton v. Wyeth*, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); *Allen v. Wyeth*, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); *Chestnut v. Wyeth*, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); *King v. Wyeth*, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Culpepper v. Wyeth*, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Braden v. Wyeth*, No. 04-CV-0384-T (M.D. Ala. May 24,  2004) (Thompson, J.); *Cross v. Wyeth*,

by a plaintiff even though the seller exercised all possible care.  *Casrell v. Altec Indus., Inc.,* 335 So. 2d 128, 132-33 (Ala. 1976); *Atkins v. American Motors Corp.*, 335 So. 2d 134, 141 (Ala. 1976); *see also Judson v. Nissan Motor Co.*, 52 F.Supp.2d 1352, 1360 (M.D.Ala. 1999) (De Ment, J.).  The Supreme Court of Alabama in *First National Bank of Mobile v. Cessna Aircraft Co.,* 365 So. 2d 966 (Ala. 1978), illuminated a principle underlying AEMLD – that liability attaches to sellers solely because they have exposed an expected user of a product not reasonably safe to unreasonable risks:

> On whatever theory, the justification for the strict liability has been said to be that the seller, [b]y marketing his product for use and consumption, **has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods** . . . **The burden of accidental injuries caused by products intended for consumption [sic] be placed upon those who market them**, . . . and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

*First Bank of Mobile,* 365 So. 2d at 967 (quoting Restatment (Second) of Torts  § 402A, Comment C).

Defendants argue that the Alabama Managers and Sales Representatives cannot be held liable under AEMLD because they are not sellers.  Defendants site no case law in support of this assertion.[3]  The Alabama Managers and Sales Representatives may properly be held liable for their participation in the marketing of HRT drugs.   *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986).   As Plaintiff stated in her Motion to

---

No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); *Bennett v. Wyeth*, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).

[3] Defendants state in their brief that:  "To state a cause of action under the AEMLD, 'the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product.'"  This sentence highlights Defendants' misunderstanding of the standard regarding fraudulent joinder.  Defendants bear the burden of proving there is no possibility that Plaintiff may state a claim.  Plaintiff does not have the burden of "proving" a claim upon motion to

Remand, Alabama Defendant Managers and Sales Representative marketed HRT drugs to physicians, including Plaintiff's physician:  1) by "calling" on physicians (Compl. ¶ 16); 2) distributing samples that were given to patients (Compl. ¶ 17); 3) conducting educational seminars (Compl. ¶ 24); and 4) distributing sales literature (Compl. ¶ 30.)   Defendants in communications to physicians compared the efficacy of HRT to other existing menopausal treatments, sought to distinguish HRT from other menopausal therapies already on the market, and worked to persuade physicians to prescribe HRT to their patients.  Alabama Managers and Sales Representatives provided physicians with HRT product information.  Throughout these activities, Alabama Defendants worked to increase sales of HRT.

In working to increase sales, Alabama Defendants acted as "sellers" under AEMLD.  A finding of individual liability under AEMLD against Alabama Managers and Sales Representatives would be consistent with the rule under Alabama law that "officers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."  *Ex parte Charles Bell Pontiac*, 496 So. 2d at 775 (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983)); *see Chandler v. Hunter*, 340 So. 2d 818, 822 (Ala. Civ. App. 1976).

Defendants site *In re Rezulin Prod. Liab. Litig.,* 133 F. Supp.2d 272, 287 (S.D.N.Y. 2001), in support of their argument.  With all due respect to the United States District Court for the Southern District of New York, Plaintiff asserts that Judge Kaplan's decision is contrary to the settled law of Alabama.

Defendants also cite *In re Prempro Products Liability Litigation (Christiansen v. Wyeth, Inc.),* No. 4:03CV1507-WRW (June 27, 2005), a decision in which the MDL Court denied

---

remand, only that a colorable claim is possible.  Plaintiff will have opportunity to prove her claim after discovery and at a trial before a jury of her peers.

remand where the Alabama state law claims were made against pharmacies, not sales representatives. Though the Court denied Plaintiff's motion to amend the complaint to add sales representatives, the Court did so without apparently considering decisions made by Alabama state court or Alabama federal courts applying Alabama law. Rather, the MDL court appeared to rely solely on the New York District Court's decision in *In re Rezulin.* The court's decision in *Prempro* did not involve a detailed analysis of Alabama law and Plaintiff believes the decision was in error.

Plaintiff once again turns the Court's attention to *Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1224 (M.D. Ala. 1999), *Seaborn v. R.J. Reynolds Tobacco Co.,* No. 9-T-1540, 1996 WL 943621 (M.D. Ala. December 30, 1996), and *Jenkins v. R. J. Reynolds Tobacco Co.*, 96-T-1489 (M.D. Ala. Dec. 30, 1996). The District Courts allowed plaintiffs to pursue claims against the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset. *Id.* In each case, the court rejected defendants' claim of fraudulent joinder and remanded the case to state court. *See McCaffery v. Warner-Lambert Co.*, et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000); *Pace v Parke-Davis*, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000); *Acton v. R.J. Reynolds Tobacco Co.*, No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996).

### B.    Qualitest Pharmaceuticals, Inc.

Defendants argue that Qualitest Pharmaceuticals, Inc. as a distributor of HRT drugs cannot be held liable under AEMLD or under any of the other claims asserted by Plaintiff because there is no causal connection between Qualitest and Plaintiff's injuries. Qualitest claims

that it is a passive distributor. (William S. Propst Aff. ¶¶ 3-5.)[4]  Nevertheless, Plaintiff's pharmacy profile identifies Qualitest as the company responsible for the MPA taken by Plaintiff[5].  It is undisputed that Qualitest is a seller of MPA.

Under AEMLD, all those who are in the business of "selling" an unreasonably dangerous product may be held liable for injuries caused by the defective product. *Casrell*, 335 So. 2d at 132.  Plaintiff in her Complaint alleges that Qualitest sold HRT drugs, drugs that are unreasonably dangerous. (Compl. ¶ 5.)  In his affidavit, Propst declared that Qualitest distributed or sold HRT drugs. (William S. Propst Aff. ¶ 4.)  There is no dispute that Defendant Qualitest placed HRT drugs into the stream of commerce.  Plaintiff alleges that as a direct result of ingesting HRT, she suffered physical injury, including breast cancer. (Compl. ¶ 1.) Without question, Plaintiff has alleged a colorable claim against Qualitest under AEMLD.

Defendant Qualitest, and the Wyeth Defendants on Qualitiest's behalf, argue that there is no causal connection between Qualitest and Plaintiff's injuries.  Plaintiff does not dispute that under AEMLD, a distributor may assert the affirmative defense of lack of causal connection. See *Mathis v. Harrell Co.*, 828 So. 2d 248 (Ala. 2002) (reversing summary judgment where company was "in the business" of selling or leasing products that it cannot use the defense that was merely a seller of the product).

The presence of an affirmative defense, however, does not negate the possibility of Plaintiff stating a colorable claim against Defendant Qualitest.  Discovery has not been accomplished in this case.  After discovery, there will be opportunity for Qualitest to present evidence of their defense of lack of causal connection.  The motion before the Court is not the

---

[4]Mr. Propst is the President of Qualitest and its sister company, Vintage Pharmaceuticals, Inc.  According to the attached article, Vintage manufactures drugs for Qualitest to sell, but the circumstances surrounding this relationship are vague. (Exhibit B)  Issues of fact exist as to Qualitest's complete role in the manufacturing of HRT.

appropriate juncture to draw conclusions about the merits of the claims. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The facts alleged in the Propst affidavit are ripe for cross-examination, especially given the fact Propst and his companies, Qualitest and Vintage Pharmaceuticals, have been indicted for conspiring to defraud the United States Government. (Exhibits B and E).

Again, Plaintiff directs the Court's attention to the United District Court for the Middle District of Alabama's decision in *Judson v. Nissan Motor Co.*, 52 F.Supp.2d 1352 (M.D. Ala. 1999). In *Judson*, Plaintiff alleged claims under AEMLD relating to a defective Nissan Pathfinder against Nissan as well as Mitchell Nissan, the dealership that sold the vehicle to Plaintiff. *Judson*, 52 F.Supp.2d at 1352. Defendants argued in that case that Mitchell Nissan was fraudulently joined and asserted the defense of lack of causal connection. *Id.* at 1358. Defendants argued that Mitchell Nissan did not alter the product, did not contribute to the alleged defect, or inspect the condition of the vehicle. *Id.* In finding that Mitchell Nissan was not fraudulently joined, the Court noted that under *Casrell* that a seller may be held liable under AEMLD:

> [A] manufacturer, or supplier, or *seller*, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, (commits) negligence as a matter of law. . . In other words, **the fault or negligence of the defendant is that he has conducted himself in a negligent manner by placing a product on the market causing personal injury or property damage, used to its intended purpose**.

*Id.* at 1359 (quoting *Casrell*, 335 So. 2d at 132). The district court in *Judson* found that defendants failed to prove as matter of law the affirmative defense of lack of causal connection. *Id.* at 1362; *see Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1224 (M.D. Ala. 1999) (finding that a defendant distributor may be held liable under AEMLD where retailer

---

<sup>5</sup> The Food and Drug Administration's website lists Qualitest's National Drug Code in association with MPA. This National Drug Code is listed on Plaintiff's pharmacy profile. (See Exhibits C and D)

received superior information to the public about the products defects).  The same is true in this case; viewing the allegations in a light most favorable to Plaintiff, Defendants have failed to establish as a matter of law there is no possibility that Plaintiff can prove a cause of action under AEMLD against Qualitest.

Defendant Qualitest, as a seller of HRT drugs, is properly joined to this action.

### III.    Plaintiff Has Alleged Valid Claims of Negligence and Breach of Warranty Claim Against Alabama Defendants

Defendants further contend that Plaintiff cannot proceed in prosecuting her claims for negligence and for breach of warranty against Defendant Alabama Managers and Sales Representatives because they are not "sellers" of HRT.  As established in the discussion regarding Plaintiff's claims for fraudulent misrepresentation and suppression, the Alabama Managers and Sales Representatives were indeed acting as "sellers" under Alabama law.  *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986).

The absence of a direct or contractual relationship between Defendant Alabama Managers and Sales Representatives and Plaintiff does not bar a claim of negligence *or* a breach of warranty claim.  *King*, 570 So. 2d 612, 616 (Ala. 1990) (involving a claim of negligence where the Supreme Court held that those who undertake action have a duty to act with due care); *Bishop v. Faroy Sales*, 336 So. 2d 1340, 1345 (Ala. 1976) (involving breach of warranty where the Court noted that a "seller" under the Uniform Commercial Code is "a person who sells or contracts to sell goods").  Under Alabama law, claims are available against agents of corporations for negligence and breach of warranty.

Plaintiff has stated valid claims against the Alabama Managers and Sales Representatives as well as Wyeth and Qualitest for negligence and breach of warranty. Each Defendant is properly joined to this action.

## CONCLUSION

For the reasons outlined here and in the Motion to Remand, this Court lacks subject matter jurisdiction. The parties to this action are not diverse as required by 28 U.S.C. § 1332. Each party is properly joined to this action. Therefore, Plaintiff respectfully urges the Court to remand this action in its entirety to the Circuit Court of Bullock County, Alabama.

/s/ Ted G. Meadows
Jere L. Beasley
Andy D. Birchfield, Jr.
Ted G. Meadows
P. Leigh O'Dell
Melissa A. Prickett
Attorneys for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document upon the parties <u>as listed below</u> by placing a copy of same in the United States Mail, first class, postage prepaid on this the 8th day of August, 2005.

<u>/s/  Ted G. Meadows</u>
Of Counsel

**<u>Attorneys for Defendants Wyeth, Inc.</u>**
**<u>and Wyeth Pharmaceuticals, Inc.:</u>**
Lee H. Copeland
Mitchell H. Boles
J. David Martin
Copeland, Franco, Screws & Gill, P.A.
Post Office Box 347
Montgomery, Alabama  36101

**<u>Attorney for Defendant Charles Payne:</u>**
Donald R. Jones, Jr.
2000 Interstate Park Drive
Montgomery, Alabama  36109

**<u>Attorney for Defendant Qualitest Pharmaceuticals, Inc.:</u>**
Emily Sides Bonds
Walston Wells Anderson & Birchall, LLP
Post Office Box 830642
Birmingham, Alabama  35283

Bill Blount
c/o Wyeth, Inc.
Five Giralda Farms
Madison, New Jersey  07940

Walter Williams, III
c/o Wyeth, Inc.
Five Giralda Farms
Madison, New Jersey 07940

Jennifer Andrews
c/o Wyeth, Inc.
Five Giralda Farms
Madison, New Jersey 07940

Bill Richards
c/o Wyeth, Inc.
Five Giralda Farms
Madison, New Jersey 07940